GEORGE T. LEITCH v. GILLETTE-HERZOG MANUFACTURING
COMPANY.[1]

May 19, 1896.

Nos. 9815—(34).

### Sale—Qualified Warranty—Discovery of Defects—Evidence.

The plaintiff agreed to manufacture for the defendant 500 iron bedsteads, to be (except in some particulars not here material) in every respect like a sample furnished by the defendant. It was also agreed that the beds should be inspected and approved by defendant at plaintiff's factory. *Held* to be a qualified warranty that the beds should be like the sample, and that the defendant's right to recover damages for a breach after acceptance of the beds was limited to defects not existing in the sample, which were not obvious on a reasonable inspection of the beds.

### Same—Finding not Sustained by Evidence.

*Held*, further, that the finding of the trial court that the defects in the beds of which the defendant complains would have been discovered if it had made a proper inspection is not sustained by the evidence.

Appeal by defendant from an order of the municipal court of Minneapolis, Holt, J., denying a motion for a new trial. Reversed.

*Booth & Douglas*, for appellant.

*James D. Shearer*, for respondent.

START, C. J. This was an action to recover a balance of $443.10 of the contract price of 500 iron bedsteads manufactured by the plaintiff for the defendant. The contract, as the trial court found it, was that the plaintiff agreed to manufacture for the defendant 500 iron bedsteads, for which the defendant agreed to pay the plaintiff $5.60 each. It was expressly agreed by the parties that such beds should be in accordance with a certain sample bed then furnished by the defendant to the plaintiff, except as to certain additions and changes not here material. It was also agreed that the beds should be inspected and approved by defendant, at plaintiff's factory, before the same were loaded on the cars.

The defendant, by its answer, admitted the making of this contract, but further alleged, by way of a counterclaim, that the plain-

[1] Reported in 67 N. W. 352.

tiff specially warranted that the beds so to be manufactured by it should be like the sample furnished (except as to the stipulated changes) and warranted that, if one of the beds would go together, they all would,—that is, that the several parts of the beds were interchangeable; that the beds were inspected at the plaintiff's factory, and appeared and seemed to be in accordance with the contract in all respects, and that, relying on the plaintiff's statement that the beds and parts thereof were interchangeable, the defendant accepted the beds, and shipped them to New Orleans, to fill a contract it there had for beds; that the beds were not constructed in accordance with the sample bed or the contract; that the defects were latent, and not possible of discovery, except by putting together each and every one of the beds; that on discovering the defects, after the beds arrived in New Orleans, the defendant notified the plaintiff of the defects in the beds; that the beds as manufactured were of no value. The reply put in issue the new matter alleged in the answer, and affirmatively alleged that the beds were in fact made in every way according to the contract.

The trial court made its findings of fact, and directed judgment for the plaintiff for the full amount claimed. The defendant appealed from an order denying its motion for a new trial.

The findings of the trial court as to the defects in the beds, and wherein they differed from the sample beds, the inspection of the beds by the defendant, and its damages, are in these words:

"That plaintiff made said beds, especially the male and female castings thereon, from the same pattern, and with the intention that any one of the male castings on the bed rails should go into and fit any one of the female castings on the bed posts, or, in other words, be interchangeable, and had also so stated to defendant, but I do not find that he made any special warranty to that effect to defendant. That said beds, when inspected at plaintiff's works, at St. Louis Park, by defendant, appeared and seemed to be like the sample beds referred to in the pleadings; but that when said beds arrived at New Orleans, and defendant attempted to put them together, it was found that the male castings were too large for the female castings, and that the braces were of unequal length, and would not fit. That in more than four hundred of said five hundred beds said castings did not go together, and defendant had to expend large sums of money in remedying said defects; and that, by reason of said defects, said beds were worth more than seven hundred and fifty dollars less than if said beds had been of the same kind as the sample bed in said respect, and said defects had not ex-

isted. · That defendant's agent, in inspecting said beds, when delivered to defendant on board the cars at St. Louis Park, only set up one or two of said beds. That if he had inspected the beds properly, and tried some more of the castings and braces, he could not have avoided discovering the defects. That plaintiff did not in any way mislead or dissuade defendant's agent from making a thorough inspection of the beds, and did not know of the said defects. That plaintiff, when notified of the defects, refused to remedy the same."

The defendant assigns as error, among others, that the court erred in finding that the plaintiff did not specially warrant that the parts of the beds were interchangeable; in finding that, if defendant had properly inspected the beds, it could have discovered the defects in the beds; and in finding, as a conclusion of law, that the plaintiff was entitled to judgment for the full amount of his claim.

It is not material in this case whether the plaintiff specially warranted that the parts of the beds were interchangeable or not, for it was the express contract of the parties that the beds should be like the sample bed; and if they were not like it, as to all substantial matters, not otherwise stipulated in the contract, there was a breach of the plaintiff's contract, and the defendant is entitled to recover damages on account of the breach, unless it waived it by an acceptance of the beds.

The undisputed evidence shows, and such is substantially the finding of the court, that the plaintiff expressly agreed to manufacture for the defendant 500 iron beds, to be equal to the sample furnished in all respects, except as to the changes already referred to. This is a warranty that the beds should be like the sample one, for it is just what the plaintiff expressly agreed that he would do. It is not necessary that the word "warrant" should be used in order to create an express warranty. It is enough if the words actually used import an undertaking that the subject-matter of the sale shall be as represented. Here the express undertaking was that the subject-matter of the contract should be like the sample. But this was not the entire contract, for it was further agreed that the beds should be inspected and approved by defendant at plaintiff's factory, before they were placed on the cars.

It is claimed by the plaintiff that this last provision so qualifies his undertaking that the beds should be like the sample that no

claim for a breach of the undertaking or warranty would survive an inspection and approval of the beds by the defendant. On the other hand, the defendant claims that the stipulation in the contract as to inspection and approval was for its benefit, and was intended to give it the right of protecting itself both by warranty and an inspection; that the right to inspect the beds before acceptance was simply a cumulative remedy. If this is a correct construction of the contract, it would follow that the defendant might accept the bedsteads, and rely on the warranty. Brigg v. Hilton, 99 N. Y. 517, 3 N. E. 51. But the contract cannot be so construed, for the agreement that the beds should be inspected and approved by the defendant at the factory was for the benefit of both parties, and was of special importance to the plaintiff; for if it was found, on such inspection, that the beds in any respect were not like the sample one, the defects could be remedied with less expense and loss to the plaintiff than could be done after the beds were accepted and shipped away by the defendant. After an inspection and approval of the beds by the defendant, its right to recover damages for the breach of plaintiff's warranty was limited to such defects not existing in the sample as were not apparent upon a reasonable inspection of the beds.

The evidence as to whether the parts of the sample beds were interchangeable is somewhat conflicting, but there is no claim that the different parts of the sample did not fit and go together, and the trial court found that the defects which it found to exist in the plaintiff's beds did not exist in the sample bed. The defects in the beds found by the court resulted from the fact that the several parts of the beds were not interchangeable, and, as a consequence, in more than 400 of the 500 beds the castings would not go together; and for this reason the beds were worth, as the court found, $750 less than if the beds had been of the same kind as the sample bed, and the defects had not existed.

It is evident that the trial court's conclusion of law that the plaintiff was entitled to recover the entire balance of the contract price, without any deductions for the damages which the defendant had sustained, was based on its finding of fact that the defects in the beds were obvious upon a reasonable inspection. The defendant was only bound to make a reasonable inspection of the

beds. What is reasonable in a given case depends upon its particular circumstances, and in this case we are of the opinion that the evidence shows that the defendant made a reasonable inspection of the beds, and that the finding of the trial court to the effect that, if it had properly inspected the beds, the defects would have been discovered, is not sustained by the evidence. It is true that if the defendant had set up, or attempted to do so, the whole 500 beds, it would have found that 400 of them were misfits (if they were so in fact), and might have rejected the defective ones. It is also true that the defendant might have discovered that the parts of the beds were not interchangeable by trying to set up a very much less number of the beds. This is apparent from the defendant's own evidence. But the question is whether the defendant was bound, under the special circumstances of this case, to do more than it did in order to discover whether the different parts of the beds would go together.

It appears from the evidence that each bed consisted of 19 separate parts, and there were to be manufactured 500 beds exactly alike. Now, the fact (which is so well known that we may take notice of it) that manufacturers in such cases make the several parts of the articles or machines to be manufactured duplicates of each other, or interchangeable; the admitted fact that the plaintiff told the defendant's inspector that, if one of the beds went together, they would all go together; and the further fact that he did set up one or more beds, and found that the parts went together properly,—do not justify a finding that he did not make a proper inspection. The inspector having applied the test suggested by the manufacturer, who was bound to know whether the several parts were interchangeable, if he said anything about the matter, and found that the parts and castings fitted in one bed, he had a right to rely on the plaintiff's statement that all of the beds would go together in the same way, or, in other words, that the several parts were interchangeable. He was not, therefore, bound to further examine and experiment with the 6,500 parts of which the beds were composed, to ascertain if all the beds would go together.

Order reversed, and a new trial granted.