GARNER and others, Respondents, vs. CHARLES A. KRAUSE
MILLING COMPANY, Appellant.

*April 8—May 3, 1927.*

*Sales: Remedy of seller upon buyer's default: Damages when a
ready market is available for goods refused by buyer: Termi-
nation of contract by act of one party: Uniform Sales Law:
Waiver of provisions.*

1. Upon an unwarranted breach of a contract of sale by the buyer,
   the seller may (1) hold the goods and sue the buyer for the
   purchase price; (2) sell the goods as agent for the buyer and
   recover the difference between the contract price and a fair
   market value upon resale as a liquidated amount of damages;
   or (3) keep the goods and recover the difference between the
   contract price and the fair market value.  p. 82.
2. If the seller elects to keep the goods sold and seeks to collect
   the difference between the contract price and the market price,
   he must give the defaulting buyer the advantage of the full
   and fair market price at the agreed point of delivery; and the
   seller sustains no damage from the buyer's breach if he elects
   to keep the goods and at the time of the breach can sell them
   on the open market at the place of delivery for a sum in ex-
   cess of the contract price.  p. 82.
3. Although one party cannot terminate a contract without the
   consent of the other, when both parties consent to terminate
   it the contract is at an end and the rights of the parties are
   fixed as of that time.  p. 83.
4. The rights of parties to a sales contract are not necessarily de-
   termined exclusively under the Uniform Sales Act, as one
   may waive that which is a condition attached by statute or
   rule of law to a contract which is silent on the subject.  p. 83.

APPEAL from a judgment of the circuit court for Mil-
waukee county: OTTO H. BREIDENBACH, Circuit Judge.
*Reversed.*

C. R. Garner & Company began an action against the
*Charles A. Krause Milling Company* to recover damages
for breach of contract.  From a judgment in favor of
*Garner & Company* the *Krause Milling Company* appealed.

The *Krause Milling Company* made three separate con-

tracts to purchase oil meal from *Garner & Company.* The purchase price under these three contracts ranged from $49 to $50.50 per ton f. o. b. cars Milwaukee, Wisconsin. Prior to the shipment of any of the oil meal here in question the *Krause Milling Company's* plant was destroyed by fire. The *Krause Milling Company* immediately notified *Garner & Company* of the fire and asserted that they were entirely excused from performing their contract because of such fire. *Garner & Company* replied by wire: "Since you refuse to go further under your contract, we treat the same as breached and are taking the products in at the present market price." Thereafter *Garner & Company* drew upon and wrote the *Krause Milling Company* that this draft represented "the difference between contract price as sold to you, and the market at the time of your breach of contract, per our telegram to you."

*Garner & Company* took the oil meal in at what they claimed to be the market price on the date of the breach. They did not, acting as agents of the *Krause Milling Company,* offer the produce for sale on the open market to any other parties for the account of the *Krause Milling Company.* The trial court entered judgment for the full amount claimed to be the difference between the contract price and the market price on the last date on which the oil meal could have been delivered under the terms of each of the three contracts.

For the appellant there was a brief by *Bottum, Hudnall, Lecher & McNamara,* and oral argument by *Geo. B. Hudnall* and *Herman E. Friedrich,* all of Milwaukee.

For the respondents there was a brief by *Quarles, Spence & Quarles,* attorneys, and *Arthur Wickham,* of counsel, all of Milwaukee, and oral argument by *Mr. Wickham.*

STEVENS, J. It is unnecessary to consider the question of what was in fact the contract entered into by these parties

because it clearly appears that *Garner & Company* are entitled to no recovery under the contract which they contend was made by the communications that passed between these parties.

If the contract gave the *Krause Milling Company* no right to cancel when its plant was destroyed by fire, *Garner & Company* had the option: (1) to hold the oil meal for the *Krause Milling Company* and sue that company for the purchase price and thus secure the profits of the bargain; or (2) to sell the oil meal as agent for the *Krause Milling Company* and recover the difference between the contract price and a fair market value upon resale as a liquidated amount of damages; or (3) to keep the goods and recover the difference between the contract price and the fair market value. *Schuenemann v. John G. Wollaeger Co.* 170 Wis. 616, 618, 176 N. W. 59.

*Garner & Company* kept the meal themselves and attempted to charge the *Krause Milling Company* what they claimed to be the difference between the contract price and the market price at the date of the breach. They made no effort to sell the meal on the open market. The meal was not offered for sale in Milwaukee, the place of delivery. The market price claimed by *Garner & Company* was based upon the price prevailing in the state of Texas. Where a seller elects to keep the article sold and attempts to collect the difference between the contract price and the market price, he is under obligation to give the defaulting buyer the advantage of the full and fair market price at the agreed delivery point in Wisconsin. *Lincoln v. Charles Alshuler Mfg. Co.* 142 Wis. 475, 484, 125 N. W. 908. The undisputed proof is that the market price of oil meal in Milwaukee at the time of breach was $52 a ton, which is from $1.50 to $3 a ton in excess of the prices fixed in the three contracts. It follows that *Garner & Company* sustained no damage from the breach of the contract, because at the time

of the breach they could have sold the meal on the open market at the place of delivery for a sum in excess of the contract price.

The case differs from *Sloss-Sheffield S. & I. Co. v. Wis. F. & M. Co.* 187 Wis. 34, 38, 203 N. W. 746, in that the plaintiff in that case "chose to keep the contracts alive." Here *Garner & Company* elected to terminate the contract when it was breached by the *Krause Milling Company,* as they had the right to do, but were not bound to do. Manifestly one party to a contract cannot terminate it without the consent of the other. But when both parties consent to terminate the contract, it is at an end and the rights of the parties are fixed as of that time.

The rights of the parties to a contract are not necessarily determined exclusively under the Uniform Sales Act. "The provisions of the Uniform Sales Act (ch. 121, Stats.) are not above or exclusive of the broader right of parties to make their own contracts, and any or all such provisions may be negatived or varied by express agreement." *Rennie v. Volk,* 188 Wis. 508, 510, 205 N. W. 385. As was well stated in the case just cited, if one may waive substantial rights such as are guaranteed to him by the constitution, we can see no logical reason for saying that he may not, if he chooses, as did *Garner & Company* here, waive that which is a condition attached by statute or rule of law to a contract which is silent on the subject.

*By the Court.*—Judgment reversed, and cause remanded with directions to dismiss the complaint.