## NATIONAL EQUIPMENT CORPORATION v. WILLIAM J. MOORE AND ANOTHER.[1]

October 27, 1933.

No. 29,607.

[1]Reported in 250 N. W. 677.

*Donohue, Quigley & Donohue,* for appellant.

*Walter L. Chapin,* for respondents.

*HOLT, Justice.*

Plaintiff appeals from the order denying its motion in the alternative for judgment notwithstanding the verdict or a new trial.

In the spring of 1930 plaintiff sold and delivered to defendants under the terms of a conditional sales contract two dumptors, complete with twin gasolene power, five-yard capacity dump bodies and hydraulic hoists, for the price of $11,300. The title was to remain in plaintiff until fully paid. The contract provided that upon default in the payment of any instalment plaintiff could repossess the dumptors. There was a default, and plaintiff replevied the machines, alleging their value to be $3,766.65. Defendants did not rebond, but answered, setting up defenses and alleging a counterclaim based on a breach of an implied warranty of fitness for the work the dumptors were designed to do. It was also alleged that the dumptors, in the condition they were when returned to defendants reconditioned, were of no greater value than $6,000; that defendants

had paid more than that sum to plaintiff; and that they were worth $5,000 when plaintiff took them away from defendants on the writ. The verdict was in favor of defendants for the return of the dumptors, or $5,000, their value.

No specific ruling on the admission or exclusion of evidence is challenged by any assignment of error on this appeal. The only contentions are: (a) Error in submitting to the jury the issue of implied warranty and its breach; and (b) the verdict is not supported, hence there should be judgment notwithstanding.

It appears that the sale was made in Wisconsin, but that the uniform sales act there in force is like our own. No decision of the supreme court of that state was pleaded or proved construing that act upon any proposition involved in this lawsuit. Hence we may properly apply our own decisions as to the effect of the uniform sales act upon the questions presented here. The dumptor is apparently a new type of gasolene-driven motor vehicle for moving and dumping excavations in road construction. It moves slowly on a caterpillar track or endless chain. It is designed to haul heavy loads short distances and to move over swampy or loose ground more readily than trucks or teams. The load can be hoisted, dumped, and "bulldozed" at the fill without turning around. In the spring of 1930 defendants had a road construction contract partly through a swamp, and the claim is that plaintiff, who knew thereof, represented that the dumptors were fit for that sort of work and that defendants relied thereon. It is conceded that plaintiff's dumptors, put in operation during the working season of 1930, revealed defects or weaknesses in construction causing parts to break and to show abnormal wear; in fact plaintiff recognized that the machines were not what they ought to be, so it voluntarily offered to recondition them and to substitute heavier parts for those that had shown weakness. The purchasers as a rule took advantage of the offer and returned the dumptors to plaintiff at Milwaukee. Defendants, under a written contract, returned their dumptors to plaintiff for alterations and reconditioning, and received them back about June 15, 1931. Defendants claim that notwithstanding the replacement of parts and

the reconditioning of the machines they failed to be fit for the work they were designed to do.

Plaintiff assigns error on parts of the charge which submit to the jury the issue of implied warranty. From the brief as well as the oral argument we understand that these assignments of error do not find fault with the language employed or that it does not express as clearly or as fully as might be desirable the meaning of implied warranty, but that the written contracts exclude implied as well as express warranty of fitness. We find nothing in the contracts excluding implied warranties. The contract for alteration and reconditioning of the machines expressly provides that "the conditional sales contract heretofore entered into shall remain in force with the above modifications." The modification, as far as warranty went, was that plaintiff guaranteed the improved parts for 90 days after the dumptors were put into operation. In the original conditional sales contract the only language that can have any bearing on warranties is:

"It is expressly understood that this contract shall not be subject to countermand to the damage of the seller and that it covers all agreements concerning this transaction of every name and nature and no representations made by an agent or any other person not included herein shall be binding. * * * The property herein specified is guaranteed by the seller to be made of good material in a workmanlike manner, and any parts proving defective within 90 days from date of shipment will be furnished free * * *. But it is understood that when machines are furnished with power, the engine or motor is sold with manufacturer's guarantee only."

It cannot be successfully claimed that implied warranty is excluded because the trade name "Koehring Heavy Duty Dumptor" is contained in the sales contract. This dumptor had not acquired a reputation. It was in the experimental stage. The evidence brought the case within the application of Iron F. C. Stoker Co. v. Brown, 182 Minn. 399, 234 N. W. 685. We are also of the opinion that the language above quoted from the conditional sales contract does not exclude the existence of implied warranty under the con-

struction placed upon the uniform sales act (2 Mason Minn. St. 1927, § 8390) in Bekkevold v. Potts, 173 Minn. 87, 216 N. W. 790, 59 A. L. R. 1164. In Baumgartner v. Glesener, 171 Minn. 289, 292, 214 N. W. 27, 28, it was said:

"Since the adoption of the uniform sales act, although an express warranty of quality be given, one not inconsistent with it may also be implied."

Plaintiff relies on Ross v. Northrup, King & Co. 156 Wis. 327, 144 N. W. 1124; Lee v. Pauly M. T. Co. 179 Wis. 139, 190 N. W. 819; Renne v. Volk, 188 Wis. 508, 205 N. W. 385; Garner v. Charles A. Krause Milling Co. 193 Wis. 80, 213 N. W. 637. The Ross case was decided on the express declaration contained upon the seed package sold that the seller did not warrant the kind or quality of the seed. In the Lee case [179 Wis. 140] the warranty was specifically limited to making good any part of the truck sold which should prove defective within 90 days, "this warranty being expressly in lieu of all other warranties expressed or implied and of all other obligations or liabilities on our part, and we neither assume nor authorize any other person to assume for us any other liability in connection with the sale of our trucks"; and it was held that this written warranty did not include the guaranty stamped on the engine by its manufacturer that it had sufficient power to haul a five-ton load ten miles an hour on the level, the principal complaint being lack of power to haul such load. The Renne and Garner cases have no application to the questions here involved.

Does the evidence support the verdict, which finds an implied warranty of fitness, a breach thereof, and damages exceeding the amount of the unpaid part of the purchase price of the dumptors? It must be conceded that the testimony of Sprague, the operator during 1930 of one of the dumptors, and of Lawrence Miller, an employe of plaintiff, is very persuasive that after being reconditioned and in part reconstructed the machines were reasonably fit for the work for which they were sold. But there is the testimony of the operator of the other dumptor, of one of defendants, and of others to the contrary. The fact that plaintiff of its own motion called

in the dumptors of the output of 1930 for the purpose of making rather substantial structural changes goes to prove that plaintiff realized that the ones sold to defendants were not fit to do the work they were sold to do. After the changes were made and the dumptors were returned to defendants the middle of June, 1931, no breakage of parts occurred; but there was evidence that ordinary use showed such rapid wear of the main parts of the machines that the jury had substantial basis for finding them still unfit for the purpose for which plaintiff sold them to defendants. So we cannot disturb the verdict approved by the trial court.

Plaintiff by reply to the answer and on this appeal claims that the second contract adjusted and settled any breach of warranty growing out of the original conditional sales contract. This position is hardly maintainable in view of the above quoted part of the second contract, to the effect that the first "shall remain in force." Of course, if the altered and reconditioned machines had complied with the implied warranty, no claim for damages because of any prior breach would have survived. But if thereafter there still was a noncompliance with the warranty, defendants' damages were augmented by the expenses assumed under the second contract.

There is also a contention in the brief that, since defendants did not give timely notice of the defects in the machines or of the breach of the implied warranty, the counterclaim is barred by 2 Mason Minn. St. 1927, § 8423. White Pine Lbr. Co. Inc. v. Madsen & Peterson, 166 Minn. 228, 207 N. W. 628. It is enough to say that no such defense to the counterclaim was pleaded, litigated, or submitted to the jury. There was some testimony as to whether certain complaints were made to plaintiff after June 15, 1931, but nothing to indicate to the court or opposing counsel that such evidence was directed to prove noncompliance with said § 8423, and no such issue was submitted or requested to be submitted to the jury.

The order must be affirmed.