ALFRED L. MALLERY, ADMINISTRATOR, SUBSTITUTED FOR FRANK E. LAMMERS, DECEASED, v. NORTHFIELD SEED COMPANY.[1]

January 10, 1936.

No. 30,602.

[1]Reported in 264 N. W. 573.

130

See 194 Minn. 236, 259 N. W. 825.
*Kingman, Cross, Morley & Cant,* for appellant.
*William W. Pye,* for respondent.

I. M. OLSEN, JUSTICE.

Plaintiff appeals from the judgment in favor of the defendant.

We refer herein to Frank E. Lammers as plaintiff. He died since the action was tried, and Alfred L. Mallery, as administrator of his estate, has been substituted as plaintiff.

Plaintiff, a farmer living near Lakeville in this state, purchased alfalfa seed from the defendant. One purchase was made in the spring of 1928 and a second purchase in the spring of 1929. The seed was purchased for sowing on his farm. He operated a dairy farm and raised feed for his cattle. He brought this action to recover damage for breach of warranty in the sales to him by defendant of this seed. There was a jury trial and a verdict for $500 in plaintiff's favor. Thereafter the court granted defendant's motion for judgment notwithstanding the verdict, and thereupon judgment for defendant was entered and this appeal taken.

The plaintiff's claim is that defendant warranted the seed to be 98 per cent pure alfalfa seed and that he relied thereon; that in fact the seed so purchased in 1928 contained 40 per cent of alsike clover seed, and that purchased in 1929 contained 40 per cent of sweet clover seed; that he suffered damage by reason of such breach of warranty. Defendant, by its answer, denies that it warranted the seed and further alleges that it was not the seller of the seed, but that it acted only as agent for the Albert Dickinson Company, a seed house. This second defense, that defendant acted only as

agent for the Dickinson company, is not seriously argued and needs no further discussion here.

The warranty relied upon by the plaintiff is based upon the tag or label upon the bags of seed received by him, which are required to be placed thereon by the statute, 1 Mason Minn. St. 1927, §§ 3957-3, 3957-4. These labels read as follows:

```
"Lot................
Name)
Kind)   South Dak. No. 12
                Alfalfa
Purity  99%      Germ.  96%
                Grown in S. Dak.
Date  3/10/29    Imported from.........
....................................."
```

The statute requires such labels to state, among other things, "the approximate percentage by weight of the agricultural seed exclusive of inert matter, weed seeds and of other agricultural seeds, which are distinguishable by their appearances." Also, "the full name and address of the seedsman, importer, dealer or agent or other person selling, offering or exposing for sale said agricultural seed."

When there is a mixture of seeds, the label is required so to state, and to state, "the name and approximate percentage by weight of each kind of agricultural seed in such mixture."

That the tag or label here attached to each bag of seed was a warranty as to purity and kind is established, we think, by our holding in the case of Baumgartner v. Glesener, 171 Minn. 289, 214 N. W. 27. There the representation was by an advertisement, stating the germination percentage of the seed. It was held that the advertisement constituted an express warranty. If so, the representation here made on the labels of the seed containers as to purity, being a statutory requirement, is even more clearly a warranty. The case also held that there was an implied warranty of the seed. See on this question Bekkevold v. Potts, 173 Minn. 87, 90, 216 N. W. 790, 59 A. L. R. 1164; National Equipment Corp. v. Moore, 189 Minn. 632, 635-636, 250 N. W. 677.

While no decision on exactly the facts here presented has been cited, we are satisfied that defendant, after giving the purity and germination percentages of the seed, in compliance with the statute, could not evade the effect thereof, or the warranty thereby made, by annexing a subsequent condition that it gave no express or implied warranty. The decision in Moorhead v. Minneapolis Seed Co. 139 Minn. 11, 165 N. W. 484, L. R. A. 1918C, 391, Ann. Cas. 1918E, 481, is fairly in point.

The evidence justified the jury in finding that there was a warranty of the purity of the alfalfa seed and that it did not comply with the warranty. No question as to the measure of damages or of the amount allowed is presented.

One other question is raised by defendant. The sales statute, 2 Mason Minn. St. 1927, § 8423, reads as follows:

"In the absence of express or implied agreement of the parties, acceptance of the goods by the buyer shall not discharge the seller from liability in damages or other legal remedy for breach of any promise or warranty in the contract to sell or the sale. But, if, after acceptance of the goods, the buyer fail to give notice to the seller of the breach of any promise or warranty within a reasonable time after the buyer knows, or ought to know of such breach, the seller shall not be liable therefor."

Plaintiff accepted and seeded the first quantity of seed ordered early in the season of 1928. In May, 1929, he ordered 200 pounds of alfalfa seed, which he accepted and sowed that season. As appears from the evidence, the alfalfa seed sowed one season does not produce a crop and is not cut until the following year. So the crop from the first seeding was not ready to cut until in the summer of 1929. Plaintiff made no claim of any breach of warranty or any defect in the seed until about the time he cut the first crop in the summer of 1929. Plaintiff made no examination of any of the seed before sowing same. He did not himself sow any of the seed. One of his hired men did that. Plaintiff testified that he was in poor health and was out to the barn or place where the seed was kept on only a few occasions. He did testify that he carefully examined

the tag, the label on which the percentage of purity of the seed was stated and which is the warranty here claimed. He further testified:

Q. "Isn't it a fact, Mr. Lammers, that the difference between alsike seed and alfalfa seed is very great, so that you can determine it at once?

A. "Why, yes, sir, it is, * * * .

Q. "You didn't look at it?

A. "No. Well, I don't know how—

Q. "Haven't you examined alfalfa seed?

A. "I don't know if I have or not. I couldn't say I have.

Q. "And haven't you examined alsike clover seed?

A. "I never had any before. I never sowed any.

Q. "Then you never have examined it?

A. "No.

Q. "And you didn't examine this seed to see whether it was ninety-eight per cent pure, as you say?

A. "No, I have no way of determining it."

He did not test the seed.

Defendant's witness, Larkin, testified that there was a difference in color between alfalfa seed and alsike clover seed, that alfalfa seed is yellow and clover seed dark, kind of a "purple-black, like of a mixed"; that there is a little difference in size; that the difference could readily be seen.

We do hold that § 8423 of the sales law has general application to sales of seeds and other articles of commerce, and that the buyer must give notice of a breach of any promise or breach of warranty within a reasonable time after he knows or ought to know of such breach. While Pine Lbr. Co. Inc. v. Madsen & Peterson, 166 Minn. 228, 207 N. W. 628.

In Wavra v. Karr, 142 Minn. 248, 172 N. W. 118, 120, a seed case, it was held that plaintiff could not recover for the reason that at the time he accepted and sowed the wheat he knew that it was full of noxious seeds and a large per cent of the wheat kernels so shriveled and dried up as to be worthless for seed. The court did

state the law as follows [142 Minn. 251]: "It is well settled law, in this state and elsewhere, that a party who is subjected or exposed to injury from a breach of contract is under legal duty and obligation to minimize and lessen his loss, and he can recover only such damages as he could not with reasonable diligence and good faith have prevented." Many citations are given.

In Marshall Mill. Co. v. Hintz-Cameron Co. 156 Minn. 301, 194 N..W. 772, the contract gave the purchaser 30 days' time to examine the flour sold and discover and report defects in quality. Defendant was held estopped from recovering damages for defects in quality because it failed to report any such defects within the time limited.

The plaintiff, under the statute, had a reasonable time to inspect the seed and discover any defects or foreign seed in the seed furnished, which would be apparent to one making a reasonable inspection. Leitch v. Gillette-Herzog Mfg. Co. 64 Minn. 434, 67 N. W. 352, discusses the question to some extent.

There was no inspection. So the question is: Would the plaintiff, if he had made a reasonable inspection of the seed, have discovered that it was a mixture of alfalfa and clover or other foreign seed to a substantial percentage? Plaintiff, while a farmer, is not shown to have had any experience in inspecting or using either alfalfa or alsike seed. While he testified, on cross-examination, that in fact there is a difference between alsike and alfalfa seed "so that you can determine it at once," he further testified that he had never had or examined any alsike seed and had no way of determining it. After the seed was sown there was apparently no way of discovering the seed mixture until the crop grew up the next summer.

On the evidence on this question, we conclude that this court cannot say, as a matter of law, that plaintiff is prevented or estopped from recovery because of his failure to inspect the seed and discover the large percentage of alsike or sweet clover therein before sowing the seed. The evidence on the question is meager. While Mr. Lammers is now deceased and no further evidence can be given by him, it would seem probable that additional evidence is obtainable

on either side, which will, on a new trial, clear up the question. Would the ordinary farmer, not a seed expert, by a reasonable inspection of a seed mixture of this kind, be able to discover that it contained a large percentage of other than alfalfa seed? There is no need of a new trial on the question of agency or warranty. We hold there should be a new trial on the question of failure to inspect, as above indicated.

The judgment is reversed and a new trial granted on the one question above stated.

Reversed.