MARY A. NELSON v. THE SWEDISH HOSPITAL
AND ANOTHER.
GENERAL ELECTRIC COMPANY, THIRD-PARTY
DEFENDANT.[1]

April 2, 1954.

No. 36,174.

[1]Reported in 64 N. W. (2d) 38.

552

*Meagher, Geer, Markham & Anderson, O. C. Adamson II,* and
*E. J. Leathers,* for appellants.

*O. A. Brecke,* for respondent Nelson.

*Dorsey, Colman, Barker, Scott & Barber, Henry Halladay,* and
*Curtis L. Roy,* for respondent General Electric Company.

THOMAS GALLAGHER, JUSTICE.

Plaintiff, Mary A. Nelson, brings this action for damages on
account of injuries sustained when the "head" of a General Electric
KX-10 X-ray machine fell upon her face while she was being treated
at The Swedish Hospital in Minneapolis September 29, 1949. She
joined as defendants in her original complaint The Swedish Hospital, a corporation, and Dr. G. T. Nordin, in charge of its X-ray
department.

Defendants, as third-party plaintiffs, thereupon impleaded General Electric Company, a corporation, and General Electric X-ray
Corporation as third-party defendants in an action for contribution
or indemnity on the basis of negligence and breach of warranty in
the manufacture and sale of the X-ray machine involved. Subsequently, plaintiff amended her complaint to join General Electric
Company and General Electric X-ray Corporation as defendants in
her action for negligence and breach of warranty in the sale of the
machine.

Prior to the action, General Electric X-ray Corporation had
merged with General Electric Company, the latter assuming all of
the obligations and liabilities of the former. In consequence, by
stipulation the action as to General Electric X-ray Corporation was
dismissed.

At the close of the testimony, the court directed a verdict in favor of General Electric Company as third-party defendant in defendants' third-party action against it; but in plaintiff's action, submitted to the jury the issue of negligence as to all defendants, including General Electric Company. The jury returned a verdict in plaintiff's favor against The Swedish Hospital and Dr. G. T. Nordin in the sum of $4,355 but found in favor of General Electric Company.

This is an appeal by The Swedish Hospital and Dr. G. T. Nordin from the whole of an order denying their subsequent motion for judgment notwithstanding the verdict; or, in the alternative, for judgment in their favor as third-party plaintiffs against General Electric Company; or, in the alternative, for a new trial on all issues.

On appeal these defendants contend that:

(1) The evidence does not establish any negligence on their part;

(2) The evidence clearly establishes negligence on the part of General Electric Company requiring contribution as a joint tortfeasor (a) in failing to construct a machine free of defects, (b) in failing to inspect it for defects prior to its delivery, and (c) in failing to furnish adequate instructions in the care thereof; and

(3) The evidence established General Electric Company's liability for indemnity on account of breach of express or implied warranties in the sale of the machine.

The facts are as follows: In September 1949 plaintiff was undergoing a series of treatments for a lesion on the side of her nose at The Swedish Hospital in Minneapolis. For such treatments, a General Electric KX-10 X-ray machine was being used by hospital technicians. In the course of the third treatment, on September 29, 1949, while plaintiff was lying face upward on a table and the attending technician was adjusting the X-ray machine over her face, without warning, the head of the machine, weighing 30 to 42 pounds, separated from the counterbalancing weights sustaining it and fell, striking plaintiff on the face and causing the injuries for which this action was brought.

When the machine was inspected shortly thereafter, it was found that but one clamp held the counterbalancing weight to the cable

with which the head of the machine was raised and lowered, rather than two clamps as specified by General Electric Company; and that the single clamp had failed to keep the weight properly attached to the cable, so that in consequence the head of the machine had separated from the weight and fallen upon plaintiff.

The machine was purchased by The Swedish Hospital from General Electric X-ray Corporation in 1946. It was assembled by General Electric Company before delivery. It includes an adjustable head counterbalanced by a weight attached to a cable and enclosed in a hollow tube. The purpose of the weight is to counterbalance the head of the machine so that the latter may be readily raised or lowered when the machine is in use. A lock, which stops the head and secures it at the desired height above the patient, is attached.

General Electric Company submitted testimony that at the time of the delivery of the machine to the hospital in 1946 a booklet of directions and instructions accompanied it. Defendants did not deny receipt thereof, their testimony being limited to the statement of Dr. Nordin that he did not remember receiving it. A copy of this booklet was received in evidence over their objections. With reference to the counterweight it stated:

"* * * The weight of the tube unit, cross carriage, vertical carriage, cables and cable supports *is properly counter-balanced by means of a cable,* Fig. 42 *and counterweight* running inside the tube column. Proper locks are provided at all points of swivel as well as for the vertical and horizontal movement of the tube unit." (Italics supplied.)

Under "Maintenance" it directed that:

"In the event that some unforeseen difficulty should arise; it is recommended that you get in touch with your local G. E. X-Ray representative or the Engineering Service Department at the Chicago Office."

A written guarantee included therein provided:

"All parts of this General Electric X-Ray Corporation apparatus with the exception of the x-ray tube and high voltage cable are

guaranteed for six months from date of installation, to be free from defects in workmanship or material. Any parts so failing will be replaced or repaired without charge. This guarantee, however, does not cover damage resulting from carelessness or failure to follow these instructions. The liability of the company arising out of the supplying of this apparatus, or its use, whether on warranties or otherwise, shall not in any case exceed the cost of correcting defects in the apparatus, and after the said six months period, all such liability shall terminate.

*　*　*　*　*

"Years of experience in the design and construction of x-ray apparatus combined with fine workmanship and materials are built into all General Electric X-ray apparatus. This, however, does not obscure the fact that any apparatus may be abused. This equipment when properly operated, will render years of useful and satisfactory service. It is designed for a specific purpose. Complete data is contained in these directions which should be carefully consulted before the equipment is put into service. Unusual or special techniques or procedures should never be attempted without assurance that it is within the normal capacity of the unit. To do so voids the guarantee and relieves the manufacturer of liability for failure of the equipment. The General Electric X-ray Corporation assumes no responsibility for injuries or damages to persons or property arising out of the use of any technique or procedure."

It is not disputed that in the three years before the accident the machine was in daily use under the exclusive control of defendants, such usage sometimes involving as many as six treatments a day. During this period, it had never been inspected for defects or been given an overhauling of any kind. Service experts were called if something went wrong with any of the hospital equipment, but with reference to this particular machine, the only call ever made related to an adjustment of the tube handle which holds the head in place and did not involve an inspection of the machine otherwise.

The tube in which the clamp and weight are located can be taken down and inspected in less than 30 minutes. Expert testimony was

submitted that it was possible for the single clamp in use here to loosen as the result of constant usage of the machine and that this was the reason two clamps instead of one were specified. Evidence was submitted which justified a finding that the machine was equipped with two clamps at the time of its delivery.

In a memorandum made a part of the order appealed from, the trial court stated:

"1. The negligence of the defendants hospital and doctor in using this device for three years without inspection was for the jury, and the jury was justified in deciding against them. The part of this machine that failed was not complicated and could easily have been inspected. Also, the danger in the use of this apparatus was great, and reasonable care required care commensurate with the danger.

"2. The negligence of the General Electric Company in the manufacture of this product was submitted to the jury, and the jury held for the General Electric Company. This is a binding finding that the product was in a safe condition when delivered.

"3. The defendant General Electric Company is not liable on either implied or express warranty on the law and the facts in this case. See 215 Minn. 551.

"4. The General Electric Company was not liable on any implied warranty for failure to inform the hospital that it should make an inspection. Such an issue was not properly raised by the pleadings, nor would the facts justify the submission of such an issue. This machine had been used for three years. The law required that the hospital make some inspection with its continued use. Under the circumstances it was not the duty of General Electric to inform the hospital to do that which a reasonably prudent person is required to do."

■ We believe there is adequate evidence to support a finding of negligence on the part of defendants, The Swedish Hospital and Dr. G. T. Nordin. The machine was under their exclusive control for a period of three years prior to the accident. It was part of the hospital's permanent equipment. The duty rested upon them to inspect and maintain it in a safe operating condition. Notwith-

standing this, they concede that no inspection of it had been made at any time since its purchase. Nor can it be said that the defects were hidden. Dismantling it to inspect the parts that failed was not a complicated process. It could have been completed in less than 30 minutes. The machine's constant usage over the three-year period, sometimes involving as many as six treatments daily, would, of itself, give cause to a reasonable person for inspecting it at periodic intervals to determine whether any of its parts showed wear or were otherwise failing. Had this been done, the weakened clamp would have been quickly discovered. As this court stated in Goar v. Village of Stephen, 157 Minn. 228, 241, 196 N. W. 171, 176:

"* * * where there has been such a lapse of time as we have here, and there is a duty, clear and affirmative, on the part of the purchaser, to inspect and maintain as against that sure deterioration which is bound to follow from ordinary use, and a complete failure of the performance of that duty, but for which the accident could not have happened, such failure becomes the proximate and not merely a concurring cause."

Therein, cases in which the article involved was inherently and presently dangerous at the time of its delivery to the purchaser, or where the duty of inspection and maintenance rested upon some intervening agency, are distinguished from cases involving such facts as those present here. There the rule is expressed that a manufacturer is entitled to rely upon the belief that his product will be kept in a safe condition by the person upon whom rests the duty to inspect and maintain it. See, also, Kothe v. Tysdale, 233 Minn. 163, 46 N. W. (2d) 233; Fjellman v. Weller, 213 Minn. 457, 7 N. W. (2d) 521; Peneff v. Duluth, M. & N. Ry. Co. 164 Minn. 6, 204 N. W. 524; Lynch v. International Harvester Co. (10 Cir.) 60 F. (2d) 223; Restatement, Torts, § 300c. Based upon the facts outlined and the authorities cited, we must hold that the evidence here is ample to support the jury's determination that defendants' negligence was the proximate cause of the accident.

■ Plaintiff's action against General Electric was based on the claim that the defects in the equipment were caused by the negligent

or improper design, construction, and manufacture of the machine by General Electric. In instructing the jury on this issue, the court stated:

"* * * The duty * * * of * * * General Electric Company to * * * plaintiff * * * is to exercise reasonable care in its construction. The claim is that this machine was delivered with one clamp on the cable and not two, and that this constituted negligence * * *. The General Electric Company denies * * * this * * * and * * * contend that all the machines had two clamps on them * * *, and they contend that they did exercise the care that the law required of them. You * * * have to decide * * * whether they were negligent or * * * not." and "* * * if you find negligence * * * was that negligence a proximate cause of the accident to plaintiff?"

The jury found in favor of General Electric on this issue. We believe its determination finds ample support in the evidence. Clearly, the evidence does not compel a contrary finding *as a matter of law*. General Electric's specifications called for the use of two clamps on the counterweight system. Testimony was submitted that it maintained an elaborate quality control system in the manufacture of its products and that it maintained a rigid inspection program whereby each part of the machine was inspected before, and the entire machine after, assembly. While no one could state that this particular machine had two clamps when delivered, testimony was submitted that, within the knowledge of the witnesses, no machine had ever been shipped out without the two clamps specified. The absence of one clamp was not discovered until three years after delivery of the machine, and testimony was submitted that constant usage would tend to loosen the clamps. It seems clear therefrom that the jury might justifiably determine that when the machine was shipped it had been subjected to the rigid inspection described; that no defects or omissions had been discovered as the result thereof; and that, therefore, the missing clamp, as the result of wear and tear rather than through any fault of General Electric, had become separated from the equipment subsequent to its installa-

tion by defendants. Goar v. Village of Stephen, 157 Minn. 228, 196 N. W. 171; Wolden v. Deering, 105 Minn. 259, 117 N. W. 493.

■ Defendants assert that the trial court erred in directing a verdict against them on their third-party complaint against General Electric. In the third-party action, defendants sought contribution from General Electric on the ground that plaintiff's injuries were caused by defects occasioned by the negligence of General Electric in the design, construction, and manufacture of the machine; and also indemnity because of General Electric's breach of warranties in the sale thereof.

To support the claim for contribution, there must be evidence that defendants' liability to plaintiff was occasioned by the negligence of General Electric in the manufacture of the machine. The jury's verdict, however, established that there was no such negligence, a determination which appears decisive on the issue. We have frequently held that, in an action against codefendants, a determination of nonliability therein as against one of such defendants is a bar in a subsequent action between them for contribution. Bunge v. Yager, 236 Minn. 245, 52 N. W. (2d) 446; American Motorists Ins. Co. v. Vigen, 213 Minn. 120, 5 N. W. (2d) 397, 142 A. L. R. 722. Here defendants were permitted to fully litigate the issue of General Electric's negligence in the manufacture of the machine and sought vigorously to shift responsibility for the accident to its failure in this respect. It follows that the jury's determination effectively barred defendants' claim for contribution from General Electric on the grounds of the latter's negligence. American Auto. Ins. Co. v. Molling, 239 Minn. 74, 57 N. W. (2d) 847; Merrimac Min. Co. v. Gross, 216 Minn. 244, 12 N. W. (2d) 506; see, also, Duluth, M. & N. Ry. Co. v. McCarthy, 183 Minn. 414, 236 N. W. 766.

■ Defendants assert that the evidence was sufficient to create an issue of fact as to whether General Electric was liable for indemnity because of its breach of express or implied warranties in connection with the sale of the machine. There was no evidence submitted on the issue of breach of express warranties. With respect to both express and implied warranties, and liability attaching to

General Electric for any breach thereof, it would seem this issue is governed by the disclaimer in the contract which accompanied the sale of the product. It provided:

"* * * The *liability* of the company arising out of the supplying of this apparatus, or its use, *whether on warranties or otherwise, shall not in any case exceed the cost of correcting defects in the apparatus,* and after the said six months period, all such liability shall terminate." (Italics supplied.)

The law is well settled that if shipment of a product is made pursuant to directions or specifications notwithstanding the terms of the original order therefor, the subsequent acceptance of the goods by the buyer indicates his acquiescence in the later directions and specifications pursuant to which shipment was made. The terms thereof become the terms of the contract of sale. Johnson v. M. J. O'Neil, Inc. 182 Minn. 232, 234 N. W. 16; Lowry Coffee Co. v. Andresen-Ryan Coffee Co. 153 Minn. 498, 190 N. W. 985; Anderson v. Van Doren, 142 Minn. 237, 172 N. W. 117. It seems clear, therefore, that the liability of General Electric was limited to the cost of correcting any defects in the apparatus and that no liability attached for any consequential damages arising from claimed defects in the machine at the time of its delivery. In construing the effect of a similar clause in Despatch Oven Co. v. Rauenhorst, 229 Minn. 436, 445, 40 N. W. (2d) 73, 79, we stated:

"* * * The purpose of the paragraph containing the clauses that plaintiff as seller *'shall not be liable'* for certain liabilities and that it *'assumes no liability for consequential damages'* was to define and limit the liability assumed by plaintiff as seller. * * * Since, as has been pointed out, the ordinary meaning of the words 'assumes no liability' is that a party who assumes no liability shall not be liable, the clause to the effect that plaintiff 'assumes no liability for consequential damages' * * * plainly means that it shall not be liable for consequential damages. * * * A clause in a sales contract providing that the seller shall not be liable for consequential damages for breach thereof exonerates the seller from liability for such damages." (Italics supplied.)

Nor would the language of the disclaimer imply that exemption from liability for breach of *express* warranties only was involved. It covered all liabilities "whether on warranty or otherwise." Obviously, such language is sufficiently broad to exclude liability for breach of warranties of both the express and implied type, as well as those arising from other circumstances. In this respect it is distinguishable from the terms employed by the vendors in Federal Motor Truck Sales Corp. v. Shanus, 190 Minn. 5, 250 N. W. 713; National Equipment Corp. v. Moore, 189 Minn. 632, 250 N. W. 677; and Bekkevold v. Potts, 173 Minn. 87, 216 N. W. 790, 59 A. L. R. 1164, cases wherein it was held that the exclusion of liability for breach of express warranties suggested the intention not to exclude it for breach of those implied by law.

■ Defendants assert that the court erred in failing to grant their alternative motion for judgment against General Electric because of its failure to adequately instruct them in the need for periodic inspections of the machine. No claim on this ground was made throughout the trial. There was no instruction thereon nor any request therefor. Failure to submit such issue was not claimed as error in defendants' motion for a new trial. It is, therefore, not before us on the appeal from that part of the order which denied that motion. Rule 50.02 of Rules of Civil Procedure; Radabaugh v. Just, 225 Minn. 187, 30 N. W. (2d) 534; Welsh v. Barnes-Duluth Shipbuilding Co. 221 Minn. 37, 21 N. W. (2d) 43; Universal Co. v. Reel Mop Corp. 212 Minn. 473, 4 N. W. (2d) 86. In the absence of a motion for a new trial on this ground, we are without power to review the sufficiency of the evidence to justify the jury verdict. In re Estate of Ydstie, 195 Minn. 501, 263 N. W. 447; LeMieux v. Cosgrove, 155 Minn. 353, 193 N. W. 586. We are limited only to a consideration of whether defendants were entitled to judgment thereon as a matter of law.

The evidence disclosed that General Electric had not instructed defendants as to the need of periodic inspections. The latter admit, however, that from the date of the machine's purchase their reliance for its care and servicing had been placed entirely upon George H. Myers. At the time of the accident he was no longer employed by

General Electric. The services he furnished defendants were on his own behalf for the purpose of promoting good relationships with prospective customers. He was in the employ of Keliket X-ray Company. It would follow that any inadequacies in the instructions of General Electric at the time of sale could not as a matter of law be held to be the proximate cause of the accident which happened some three years later. In this state of the evidence, and applicable principles above outlined, we must hold, therefore, that the trial court was correct in denying defendants' motion for judgment on this issue.

■ Defendants also assert that the court's direction of a verdict in favor of General Electric in the third-party action, while submitting the issue of its negligence in plaintiff's action, was prejudicial in that it left the inference that in the court's opinion General Electric was free from blame. It would seem that the court proceeded in the only practical manner under the circumstances. The disclaimer did not inure to General Electric's benefit in plaintiff's action against it for negligence. In directing the verdict, the court stated:

*"* * * It means that there is no responsibility on your part, and it does not affect your decision at all."* (Italics supplied.)

At the time defendants made no claim of prejudice nor did it form a basis for their motion for a new trial. There was no violation of the applicable rules of civil procedure. Had the jury determined General Electric was liable to plaintiff for negligence, it would appear that the disclaimer would still constitute an effective bar to any claim of defendants for either contribution or indemnity because thereof.

■ Defendants finally assert that the court erred in including in the claim for damages amounts paid for plaintiff's glasses and dental plates. Over objections she testified that following the accident her vision had changed; that she had had difficulty with her teeth; and that she had paid $137 for three new pairs of glasses and $250 for three new sets of dental plates. No testimony was submitted that the accident was the cause of these difficulties. Her

physician did testify that as a result of the accident she had a severe tearing from her eye and a limitation to the side motion of her lower jaw.

It would seem clear that under our decisions the evidence outlined was insufficient to permit submission of the special damage issue for the jury's consideration. Benoe v. Duluth St. Ry. Co. 138 Minn. 155, 164 N. W. 662. Some testimony should have been submitted to support a finding that there was a causal relationship between the accident and plaintiff's described disabilities. Sporna v. Kalina, 184 Minn. 89, 237 N. W. 841, 76 A. L. R. 1280. Failure in this respect being limited to the issue of damages would not justify a new trial on other issues. The error may be corrected by reducing the damages awarded by the sum of $387, the cost of such items.

It is therefore ordered that a new trial on the question of damages be granted unless plaintiff shall within 30 days file a written stipulation consenting to a reduction of the verdict of $387.

