CHARLES H. DAY & another *vs.* MAPES-REEVE CONSTRUCTION COMPANY.

Hampshire.     September 19, 1899. — October 20, 1899.

Present: HOLMES, C. J., KNOWLTON, LATHROP, HAMMOND, & LORING, JJ.

*Contract — Warranty — Damages.*

If A. agrees to supply B. with all the "common hard brick" required in the construction of a building, knowing the use to which the brick is to be put, but not knowing the plans or details of the building, and the brick as delivered, many of which are rejected as soft, are inspected by B., whose superintendent knows that soft brick are being used in the walls of the building, and, without unrea-

sonable difficulty on B.'s part, the soft brick can be thrown out, there is no implied warranty that the brick are reasonably fit for the use intended.

In an action for the price of a quantity of brick delivered under a contract to furnish all the "common hard brick" required in the construction of a building at a certain price per thousand, many of which were soft brick, but were used by the defendant, the plaintiff is entitled to recover for the latter the difference between their value and the contract price.

CONTRACT, upon an account annexed, to recover the balance due for a quantity of brick. Trial in the Superior Court, without a jury, before *Bell,* J., who allowed a bill of exceptions, in substance as follows.

The plaintiffs agreed in writing to sell and deliver to the defendant all the common hard brick required in the construction of a building to be erected by the defendant at Northampton, under an entire contract with its owner to build it and furnish the material therefor. The plaintiffs, who are manufacturers of brick at Northampton, made and delivered at the building during its erection 415,500 brick, the contract price of which ($5.50 per thousand) was $2,285.25, and have been paid on account the sum of $1,295.25, leaving a balance of $990 sued for.

Of the brick so sold and delivered, the judge found that 40,000 were not common hard brick, but were soft brick, and not reasonably fit or suitable to use in the erection of the building. A part of these could be discriminated as soft by the color, and the rest by other tests.

It appeared that the defendant's superintendent of construction at the building rejected many of the brick brought there by the plaintiffs under the contract because they were soft and unsuitable for use in the building, culling from loads, and in some instances causing entire loads to be rejected, all of which rejected brick were by the plaintiffs taken back to their kiln at the time, and were not included in the 415,500 brick mentioned in the declaration; and other brick were sent in the place of those rejected.

It also appeared in evidence that a considerable number of soft brick so sold and delivered by the plaintiffs and used by the defendant were distributed in the exterior walls of the building, which were painted, and from which soft brick the paint has peeled; that the fact that some soft brick were being

used in the walls was known to the defendant's superintendent; and that the plaintiffs knew the use to which the brick were to be put by the defendant, but not the plans or details of the building.

Expert witnesses for the defendant testified that the building was worth in market value from $1,300 to $1,500 less than it would have been worth had the soft brick in the exterior wall been out of it, and the brick used in its construction had all been common hard brick. No other common brick than those so sold and delivered by the plaintiffs were used in the construction of the building. There was also evidence that the soft brick in the exterior walls could be removed, and common hard brick, like the other brick used in the walls, be substituted for them at a cost of several hundred dollars.

The judge found that the defendant did examine the brick to some extent when delivered, and that then or when the brick were being laid it could have thrown out the soft brick without unreasonable difficulty.

The judge did not find as a fact that there was any special warranty of quality other than implied in the phrase " common hard brick," and ruled, subject to the defendant's exception, that the facts proved did not, as matter of law, create such a warranty.

The defendant contended, and asked the judge to rule, that the facts of the contract to deliver " common hard brick," and the knowledge by the plaintiffs of the purpose for which the brick were to be used, created an implied warranty on the part of the plaintiffs that the brick would be reasonably fit and suitable to use in the erection of the building, which ruling the judge declined to give ; and the defendant excepted.

The defendant also contended, and asked the judge to rule, that the measure of damages for breach of the contract on the plaintiffs' part was the diminished market value of the building, by reason of the use of the soft brick, from the value of it if the brick had all been common hard brick, or that the measure of damages, if not as contended above, was the cost of taking the soft brick from the exterior walls of the building and substituting common hard brick therefor. The judge declined so to rule, and ruled that the measure of damages

was the diminished value of the soft brick received and used by the defendant, namely, the difference between that value and $5.50 per thousand; and the defendant excepted.

The judge found that the soft brick were reasonably worth $3.50 per thousand; ruled that as the defendant had received and used them it was liable for that price; and found for the plaintiffs. The defendant alleged exceptions.

*W. G. Bassett*, for the defendant.

*C. N. Clark*, for the plaintiffs.

HAMMOND, J.   The contract called for " common hard brick," and the ruling that there was a warranty that the brick should come up to the standard implied by that term was correct.

The court refused to rule that the knowledge on the part of the plaintiffs of the purpose for which the brick were to be used created an implied warranty that they were reasonably fit for that use, but on the contrary ruled that the facts proved did not, as matter of law, create any such warranty, and, having so ruled, did not find as a fact that there was any such warranty.

In all this we find no error.

While the plaintiffs had a general knowledge that the brick were to be used in the construction of the building named in the contract, they nevertheless knew nothing of the plans and details. With this degree of knowledge as to the building, they agreed to furnish all the common hard brick needed in its construction, and the reference to it in the contract seems to have been made for the purpose of determining the number of brick rather than their quality.

It is found as a fact that without unreasonable difficulty on the part of the defendant the soft brick could have been thrown out. It further appears that the brick as delivered were subjected to an inspection by the defendant, and that many were rejected as soft, and also that the defendant's superintendent knew that soft brick were being used in the walls of the building.

We think the court was justified in finding that the defects complained of were obvious, that there was ample opportunity for inspection by the defendant, and that such inspection was made, and that it was in the contemplation of the parties that

it should be made; that neither party supposed that the defendant was trusting to the judgment or skill of the plaintiffs, and that the defendant did not so trust, but relied upon its own judgment, and accepted soft brick with the means of knowing and actually knowing their quality; and that the evidence did not conclusively show that the parties contemplated or understood as a part of the contract that the responsibility of selecting the brick actually to be used in the building rested upon the plaintiffs.

The contract was a simple case of the sale of a common article of merchandise, and the principle invoked by the defendant is not applicable.

The rule of damages applied by the court was correct. The defendant having used the soft brick, knowing their quality, must pay for them.

Since all the exceptions arising upon the admission or rejection of evidence are material only upon the theory that the defendant's claim of special warranty of fitness is correct, it becomes unnecessary further to refer to them.

*Exceptions overruled.*