## JAMES WAVRA v. LYON KARR AND ANOTHER.[1]

### April 17, 1919.

### No. 21,179.

**Cropping contract — unfit seed — cropper not entitled to damages.**

1. By a cropping contract the owner of the land agreed to supply all necessary seed, and that it should be of good quality; the seed delivered to the cropper by the owner's agent was filled with foul seeds of various sorts, and as a whole was unfit for seeding purposes; the cropper was fully aware of the inferior character of the seed and of its unfitness for use, but nevertheless accepted the same and used it in cropping the land; the result was a substantial crop failure.

It is *held*, on the facts stated, that the cropper is not entitled to recover as damages for the failure of the owner to provide seed of good quality the value of a crop that probably would have been produced had the seed been of that quality.

**Same.**

2. The fact that the cropper at the time of the delivery of the seed objected to it as unfit for use does not change the rule of damages stated, for he could not with knowledge of the inferior quality, whether he objected to it or not, make use thereof and thus enhance his damages.

**Principal and agent — authority of agent.**

3. The agent who delivered the seed had no implied authority to bind his principal by a representation or warranty that the obviously bad seed was in fact good.

**Cropping contract — no implied warranty.**

4. There can be in such a state of facts no implied warranty of fitness.

Action in the district court for Marshall county to recover $1,500 for failure to furnish good clean seed contrary to contract. The facts are stated in the opinion. The case was tried before Grindeland, J., and a jury which returned a verdict for $800. From an order denying their motion for judgment notwithstanding the verdict or for a new trial, defendants appealed. Reversed.

[1] Reported in 172 N. W. 118.

*Julius J. Olson, Rasmus Hage, Charles Loring* and *G. A. Youngquist,* for appellants.

*F. A. Grady,* for respondent.

BROWN, C. J.

This cause presents no controversy in its facts. Defendants, residents of the state of Illinois, own a half section of farm land in Marshall county, this state. In October, 1916, they entered into a certain contract with plaintiff, whereby they leased the land to him for the cropping season of 1917. By the terms of the contract plaintiff undertook and agreed to well and faithfully till and farm the land during the term of the contract in a "good, husbandlike manner * * * to the best advantage and according to his best skill and judgment." The contract required that he furnish all machinery and farm equipment, and to plant, harvest and secure the crops raised in farmerlike style and in due and proper season. Defendants agreed to furnish all necessary seed, the same to be clean and of good quality, and to pay one-half the expense of threshing, not to exceed the rate per bushel specified in the contract. Plaintiff also agreed to deliver to defendants one-half of all grain so raised at an elevator in the city of Warren, to be designated by them, or to a building located upon the farm; the other half of the grain to belong to plaintiff.

Subsequent to the formal execution of the contract, plaintiff took possession of the land and prepared it for the ensuing crop. The parties agreed upon wheat as the crop to be raised, and at the proper time, in the spring of 1917, as the contract provided, plaintiff called upon defendants' agent at Warren, who was there operating a grain elevator, for the necessary seed wheat. He first received from the agent a wagon-load of macaroni wheat, and subsequently three loads of marquis wheat. All of which he sowed upon the land in due and proper season as required by his contract. He raised 18 bushels to the acre from the macaroni seed, but only three bushels to the acre from the marquis seed, though both were sown and planted under similar soil and other conditions. The crops so raised were harvested, threshed and divided as stipulated by the contract.

There was a practical failure of crop from the marquis wheat, and

plaintiff claims that the sole cause thereof was the poor and inferior quality of that seed. Upon that theory and claim he brought this action to recover damages for the alleged failure of defendants to furnish good clean seed as required by the contract, demanding judgment for the value of what would have been raised had the seed been of good quality. The complaint alleges in this behalf that the seed furnished by defendants was screenings; that at least 14 pounds to the bushel thereof was wild oats and other foul and noxious weeds; and that at least 15 pounds to the bushel thereof was so small, shrunken and undeveloped that it possessed no germinating qualities and was worthless.

Defendants by their answer alleged that by reason of their residence in the state of Illinois they were unable personally to superintend the farming operations under the contract, and therefore they relied wholly upon plaintiff to select the proper seed and upon his judgment in planting and harvesting the crops to be raised therefrom. They further alleged that the best seed wheat available was furnished, and with knowledge of its condition was accepted and used by plaintiff, without notice to defendants that any thereof was unfit for the purpose. The answer also put forth a counterclaim for the alleged failure of plaintiff to comply with the contract on his part, but as no question arises thereon no further reference to it need be made.

Plaintiff had a verdict, and defendants appealed from an order denying their motion for judgment or a new trial.

An exception to the instructions of the court upon the question of plaintiff's damages, and to the refusal of a request submitted by defendants raise substantially the same question, and the only one necessary to consider in disposing of the appeal. The instruction of which defendants complain was as follows:

"The court instructs you that the measure of damages for breach of contract in not furnishing the quality of seed called for by the contract is the value of a crop had the seed been of the kind the contract called for, such as would ordinarily have been produced that year, less the value of the one actually produced."

The request submitted by defendants was to the effect that if the jury found from the evidence that at the time the seed complained of was delivered to plaintiff its condition as to foulness and impaired germina-

tion was openly apparent, or was actually observed by him, then he could not recover. The request was refused.

1. Whether the instructions of the court correctly stated the law applicable to the case must be determined by the facts, as presented by the evidence, which are not in dispute. It appears that plaintiff procured the seed from defendants' agent, the grain dealer at Warren. It was spouted from the agent's elevator into plaintiff's open wagon-box, and plaintiff was present superintending the loading. He noticed from the outset that the seed now complained of was full of foul and noxious seeds, and that a large per cent of the kernels of wheat were so shrivelled and dried up as to be worthless for seeding purposes. This statement applies to all three loads of the marquis wheat. Plaintiff, an experienced farmer, was thus expressly informed of the character and quality of the seed that was being furnished him. It was in fact so bad that he stated to the agent that it "was almost a shame to use that seed on any man's land." Nevertheless he took the seed to the farm, and after carefully selecting samples thereof evidently for future purposes, without effort to remove the foul seeds and shrunken kernels of wheat, as might readily have been done by the use of a fanning mill, used the same in cropping the land, with the necessary and inevitable result of a crop failure.

In the light of these undisputed facts it seems clear that plaintiff, whatever his rights may be in other respects, is not entitled to recover upon the basis given the jury by the instructions of the trial court, namely, the value of the crop that probably would have been produced had the seed been of good quality. It is well settled law, in this state and elsewhere, that a party who is subjected or exposed to injury from a breach of contract is under legal duty and obligation to minimize and lessen his loss, and he can recover only such damages as he could not with reasonable diligence and good faith have prevented. 1 Dunnell, Minn. Dig. § 2532; 8 R. C. L. 442; 3 Elliott, Contracts, § 2151, and authorities cited. What must be done in this respect will depend upon the facts of the particular case. The rule exacts nothing unfair or unreasonable. In the case at bar, plaintiff was confronted with the fact that defendants' agent was not delivering seed of good quality, that the contract was not being complied with. In that situation he would have been justified

in procuring seed elsewhere, or, if not so procurable, then in rejecting the seed tendered by the agent altogether. But he elected to accept the seed with full knowledge of its poor quality and to attempt to raise a crop therefrom. His conduct was the reverse of what the law required of him, for the direct and natural result thereof was the enhancement of his damage and loss. Clearly he can have no standing in support of that position.

A similar situation was presented in the case of Oliver v. Hawley, 5 Neb. 439. In the case of Henderson Ele. Co. v. North Georgia M. Co. 126 Ga. 279, 55 S. E. 50, it appeared that plaintiff sold certain corn to defendant for milling purposes under the representation that it was of a particular grade and quality. The corn delivered under the contract did not comply with the contract, and "was wet, soggy, greasy and unfit for milling." But, with knowledge ·of that fact, defendant ground the corn into meal which subsequently spoiled. In an action for the purchase price of the corn defendant interposed the breach of contract and resulting damage as a counterclaim. The court held that since defendant accepted the corn with full knowledge of its condition they were not at liberty to grind it into meal, under a misdirected endeavor to lessen the damage and loss, "and then hold plaintiff liable for the disastrous results of the misadventure." So in the case at bar, plaintiff is in no position to claim damages which he knew must necessarily follow from his unwise act in cropping the land with the foul seed. The two cases cited are directly in point, and are supported by the authorities in analogous cases. Williston, Sales, § 490; 3 Elliott, Contracts, § 2152; Day v. Mapes-Reeves Const. Co. 174 Mass. 412, 54 N. E. 878; Wright v. Computing Scale Co. 47 Wash. 107, 91 Pac. 571; Uhlig v. Barnum, 43 Neb. 584, 61 N. W. 749; McCormick v. Kelly, 28 Minn. 135, 9 N. W. 675; Buckbee v. Hohenadel, 224 Fed. 14, 139 C. C. A. 478, L.R.A. 1916C, 1001, Ann. Cas. 1918B, 88.

The case of Moorhead v. Minneapolis Seed Co. 139 Minn. 11, 165 N. W. 484, L.R.A. 1918C, 391, Ann. Cas. 1918E, 481, is not in point. There was no showing in that case, as in the case at bar, that the buyer of the seed wheat there involved knew or had reason to believe that it was defective or without germinating qualities. It was accepted upon the belief that it was of good quality and suitable for seed.

2. At the time of receiving the wheat from defendants' agent, and when plaintiff made the statement that it was a shame to use it, the agent replied: "It is all right, make the owners pay you for your work if you don't get a good crop." Plaintiff contends that this statement amounted to a special warranty of the quality of the seed, binding on defendants, and brings the case within the rule applied in Flick v. Wetherbee, 20 Wis. 392. The contention is without merit and is not sustained. The seed was plainly of bad quality to the knowledge of plaintiff. If what the agent said could be construed as a warranty, a doubtful question to say the least, the evidence wholly fails to show authority in him to make a warranty of the character of the seed. No express authority to that effect appears, and since both plaintiff and the agent knew of the worthless character of the seed, it would be a strain upon the law to hold that the agent had implied authority to represent and warrant to the contrary. That he had no such authority, either express or implied, is therefore clear. Moorhead v. Minneapolis Seed Co. 139 Minn. 11, 165 N. W. 484, L.R.A. 1918C, 3, 91, Ann. Cas. 1918E, 481. The poor quality of the seed being known to plaintiff, there was no implied warranty of fitness. Anderson v. Van Doren, supra, page 237, 172 N. W. 117.

3. This disposes of the case, and from what has been said it follows that the learned trial court erred in the measure of damages given the jury, and also in refusing the special request tendered by defendants to the effect that plaintiff was under obligation to make reasonable effort to minimize his damages. The fact that plaintiff objected to the seed and pointed out the defects therein to the agent does not change the rule. His objection should have been in the form of a refusal of acceptance. The course pursued by him tended only to enhance his loss. That he could not do even though he protested to the agent that it was a shame to use the seed.

We do not stop to consider whether plaintiff is entitled to recover upon some theory or basis not found in the allegations of the complaint. All we determine is that he is not entitled to recover at all under the present pleadings, and the evidence presents no other theory or basis for a verdict in his favor. It is not, however, a case for judgment notwith-

standing the verdict. Dunnell, Minn. Dig. 1916 Supp. § 5082. The order denying a new trial will be reversed.

It is so ordered.