## O. E. THOEN v. FIRST NATIONAL BANK OF MOORHEAD.[1]

January 22, 1937.

No. 30,984.

[1]Reported in 271 N. W. 111.

48

*O. E. Thoen* and *Burdick & Burdick,* for appellant.
*James A. Garrity,* for respondent.

JULIUS J. OLSON, JUSTICE.

Plaintiff appeals from an order striking a paragraph from his complaint as irrelevant and redundant.

The complaint alleges that on September 12, 1933, plaintiff was indebted to defendant in the amount of several thousand dollars evidenced by promissory notes secured by chattel mortgage covering his farm chattels. On that day plaintiff gave to defendant as additional security certain storage tickets for oats owned by him and stored in a named elevator. The agreement in respect of this collateral security is in the form of a receipt which reads:

*"Receipt*

"Received of O. E. Thoen, as collateral security to borrowings from this bank, the following described storage receipts issued by the Averill Farmers & Mercantile Company for oats:" (Then follows list of storage tickets, amounting to 5,845.5 bushels.)

On April 2, 1934, plaintiff, having paid his indebtedness in part, executed new notes for the remainder and gave a new chattel mortgage to secure the same. The debt as thus renewed was by its terms due and payable October 2, 1934. The storage tickets were

to remain as theretofore, collateral security for the renewed indebtedness. It is next alleged that on June 25, 1934, defendant wrongfully and maliciously converted the oats, or the proceeds thereof, to its own use in that it sold all thereof as represented by the storage tickets; that defendant did so although plaintiff had "explicitly instructed" defendant "not to sell said oats, and that he was holding them for a higher price"; that no proceedings of any kind were or have been taken by defendant to divest plaintiff of his right to the same, but that defendant's taking was wilful and malicious. At the time of the actual conversion (June 25) the market price for oats was 33 cents, and there was a premium of three cents, less storage charges. Defendant sold the oats on that day and received the mentioned price, plus premium, amounting to $1,429.35. The paragraph stricken by the court immediately follows the facts we have stated and reads as follows:

"That on or about the 10th day of August, 1934, the regular market price, at Averill, Minnesota, for said grade of oats, was 50 cents per bushel, with a 3 cents premium, less storage, and that at said time, the plaintiff demanded of the defendant, said oats or their proceeds, at said increased price, but that the defendant failed, refused, and neglected to comply with said demand."

Plaintiff accordingly demands judgment for the difference between the market price on June 25 and August 10, that is to say, $860.01, with interest and costs.

In a memorandum attached to the order striking the mentioned paragraph the court lucidly states its attitude and reasons for the order made:

"Under the general rule a sale of grain on storage is consummated by endorsement and delivery of the tickets. These are to evidence the actual grain and are symbolic of both title and money value at a given time. In the present case, plaintiff contends that there was a collateral agreement which was violated by defendant's sale of the grain, thereby effecting a conversion, but plaintiff proposes to reach backward to the act vesting possession in the defendant and to maintain that the original taking and conversion

50

were of such a nature as to fall within the second rule enumerated in the Dolliff [Dolliff v. Robbins, 83 Minn. 498, 86 N. W. 772, 85 A. S. R. 466] case. If this were the rule in Minnesota, then in any action involving the ultimate conversion of mortgaged chattels, the measure of damages would be the value of the article at the time when demand for return was made. A conversion is an unauthorized act which deprives another of his property. 'Where the original taking and conversion is wilful—the measure of damages is the value of the property—when demand for its return is made,' but in the instant case the original taking was not wrongful and the conversion is alleged to have been on June 25, 1934. Consequently the alleged market value on August 10th is irrelevant, and the measure of damage will be the difference between the value on June 25, 1934, and the mortgage lien, with interest."

The arrangement between the parties, insofar as the storage tickets are concerned, is obviously a pledge rather than a mortgage. While the distinction may be unimportant to the ultimate result in this case, we think it well to note the legal distinction between the two. "A pledge is a bailment of personal property as security for a debt or other obligation." 5 Dunnell, Minn. Dig. (2 ed.) § 7734. Palmer v. Mutual L. Ins. Co. 114 Minn. 1, 130 N. W. 250, Ann. Cas. 1912B, 957. The difference between a chattel mortgage and a pledge is that a defeasible title passes by the mortgage while only possession passes by the pledge.

"A mortgage of chattels imports a present conveyance of the legal title, subject to defeasance upon performance of an express condition subsequent, contained either in the same or in a separate instrument. It may or may not be accompanied by a delivery of possession. On the other hand, where title to the property is not presently transferred, but possession only is given, with power to sell upon default in the performance of a condition, the transaction is a pledge, and not a mortgage." 21 R. C. L. p. 632, § 2.

Even if the instrument were to be construed as a chattel mortgage, we think, in view of the facts pleaded, that defendant's conduct was such as to justify the imposition of the wilful conversion

rule laid down in the case cited by the trial court. An act is wilful when it is "governed by will without yielding to reason; obstinate; perverse; stubborn." Webster's New International Dictionary (2 ed.) 1935. And where, as here, the pledgee in violation of its contract disposed of the property before the debt was due and contrary to the expressed wishes and instructions of the plaintiff owner, it thereby subjected itself to liability for the loss necessarily flowing from its breach.

Defendant, upon the present record, does not dispute liability as for conversion but asserts that its liability is limited to the value of the property as of the date of conversion. Plaintiff's claim, on the other hand, is that the property was in fact his and was subject only to defendant's interest as a pledgee or mortgagee; that as defendant has exercised dominion over the property in violation of its special interest by a sale of the oats its conduct was wilful and that thereby its liability to him is the value of the property as and when plaintiff demanded that it be returned or sold at the higher price, so that the proceeds might be applied toward liquidation of his debt. Clearly, the conversion here taking place was not accidental or under the belief that defendant had the right to dispose of the oats in such circumstances. Rather, we think, the complaint abundantly sustains the view that defendant's conduct was wilful, arbitrary, and unreasonable. If a secured creditor may proceed as did defendant here, the debtor is left in a very precarious situation. Where authority to dispose of security by the creditor is not granted by the engagement between the parties, common sense (and the law as well) forbids conduct such as here appears. It is a matter of common knowledge that grain prices often fluctuate widely. Plaintiff had the right to hold his property until there was default by him of his contract.

The rights of mortgagor and mortgagee are adequately stated in 1 Dunnell, Minn. Dig. (2 ed. & Supps. 1932, 1934) §§ 1454, 1455, and cases cited under notes. On pledges, see 5 Dunnell, Minn. Dig. (2 ed. & Supps. 1932, 1934) §§ 7734 to 7752, and cases cited in notes; 21 R. C. L. pp. 630 to 697.

What was said by this court in Dolliff v. Robbins, 83 Minn. 498, 503, 86 N. W. 772, 774, 85 A. S. R. 466, is applicable here:

"The rules established and laid down by these cases are: (1) Where the conversion is accidental, and under the belief that the person has the right to the property, and acts with no wrongful purpose or intent, the measure of damages is the value of the property at the time of the actual taking and conversion; (2) but, where the original taking and conversion is wilful and without color or claim of right, the measure of damages is the value of the property at the time and in the condition it is in when demand for its return is made."

We are not concerned at this time with the rule stated in Wavra v. Karr, 142 Minn. 248, 251, 172 N. W. 118, 120, where the court said:

"It is well settled law, in this state and elsewhere, that a party who is subjected or exposed to injury from a breach of contract is under legal duty and obligation to minimize and lessen his loss, and he can recover only such damages as he could not with reasonable diligence and good faith have prevented. (Citing authorities.) What must be done in this respect will depend upon the facts of the particular case. The rule exacts nothing unfair or unreasonable."

That matter must necessarily await a trial of the issues when made and the case is heard upon its merits.

Order reversed.

MR. JUSTICE STONE and MR. JUSTICE LORING took no part in the consideration or decision of this case.