LANESBORO PRODUCE AND HATCHERY COMPANY v. ALFER FORTHUN.[1]

November 3, 1944.

No. 33,814.

[1]Reported in 16 N. W. (2d) 326.

*Don M. Smith* and *Meighen, Knudson & Sturtz,* for appellant.
*Putnam & Carlson,* for respondent.

LORING, CHIEF JUSTICE.

Plaintiff, the proprietor of a chicken hatchery, comes here on appeal from an order denying its motion for judgment or a new trial. It brought suit on a conditional sale note for $104 given by defendant for the purchase price of 1,000 Leghorn chicks. Defendant counterclaimed for damages for breach of warranty of the quality and condition of the chicks on the ground that they were sold by sample and were represented to be in health and quality equal to the sample. He pleaded that they were not as represented, but were sick and inferior and that most of them died from the disease from which they were suffering. He sought special damages from loss of egg production and from contamination of his premises by contagious disease which necessitated vaccination of his subsequent flocks. The trial resulted in a verdict for defendant for $500, less the amount of the note. On the alternative motion for judgment or a new trial, the court reduced the verdict by $100, saying, in substance, in his memorandum that the reduction was to cover the cost of the vaccination. The court evidently regarded the cost of vaccination as too remote a consequence to be recoverable as damages. Defendant accepted the reduction.

The principal questions presented are whether the court erred in the admission of evidence in support of the claim for damages and whether there was prejudicial error in the charge.

Plaintiff was engaged in the egg and poultry business and in connection therewith maintained a chicken hatchery at Wells, Minnesota. It sold baby chicks to farmers and bought their eggs and poultry. Defendant, a customer of plaintiff, purchased chicks from it to be raised on his farm. June 30, 1941, defendant and his wife went to plaintiff's place of business to purchase some baby chicks. At the hatchery, defendant, like all customers, was not, for sanitary reasons, permitted to go into the hatchery proper but was shown two, three, or perhaps four chicks, which he examined. They appeared to be healthy. It is not denied that he was told by one of the officers of plaintiff, who showed him the chicks, that the other chicks "would all be like the one he showed me." Defendant then placed his order for 1,000 chicks and a small amount of peat. The purchase price was to be paid on the terms of the note sued upon. Plaintiff was to deliver the chicks at defendant's farm on the following Monday. When they arrived at five or six p. m., defendant's wife was home alone. She told Mr. Benson, plaintiff's man who brought the chicks, that "he should wait a while" to unload them, because her husband was not at home. Benson replied that "we better unload them anyway." Mrs. Forthun saw that some of the "chickens were sick" when she started to help unload. She called Benson's attention to their condition, and he said that "we should unload them anyway." Benson testified that Mrs. Forthun objected to the chicks because they were sick but that, notwithstanding that objection, he unloaded them. Mrs. Forthun, at Benson's request, signed her husband's name to the note sued upon. Defendant, on his return to his farm that evening, saw the condition of the chicks and immediately telephoned plaintiff to come and get them. He was told that a man would be sent out in the morning. Benson came out again in the morning, but with instructions not to take back the chicks. He gave defendant a message from plaintiff that the latter would "make it right."

The chicks continued to die until defendant lost a total of approximately 600.

Evidence tending to prove defendant's loss of egg production was received over objection that it was too remote and speculative. Evidence of contamination of the premises and the consequent necessity for vaccination of subsequent flocks was likewise received over objection. The cost of vaccinating subsequent flocks was four cents a chick or $96 in all. No other evidence of pecuniary loss caused by the contamination was offered.

■ Court and counsel treated the loss of egg production as special damages, and the case was tried on that theory. The course of dealing between plaintiff and its customers, including defendant, comprised not only the sale of chicks to the customers but the purchase of eggs from them. Leghorn chickens are among the best egg producers, if not the best. It can hardly be successfully contended that egg production was not within the contemplation of the parties to this transaction. Plaintiff contends that the court in charging the jury in regard to special damages erred in not instructing it that such damages, to be recoverable, must have been within the contemplation of the parties as a result of the breach of warranty. The court charged that special damages were such as resulted "directly and naturally" when "properly pled and proved." No request was made by plaintiff for an instruction that the special damages must have been within the contemplation of the parties. Its requests to charge relative to damages were as follows:

"The measure of damages for breach of warranty is the loss directly and naturally resulting in the ordinary course of events from the breach of warranty: (Given in general charge).

"* * * In the case of breach of warranty of quality, such loss, in the absence of special circumstances showing *proximate damage* of a greater amount is the difference between the value of the goods at the time of delivery to the buyer and the value they would have had if they had answered to the warranty. (Given in general charge)." (Italics supplied.)

On the trial, plaintiff's objection to the evidence was on the ground that the loss was remote. Defendant's answer was broad enough

to admit evidence of loss of egg production as special damages. The evidence of loss in that respect was quite definite and, under the circumstances disclosed by the evidence, so inevitable a result of the breach of warranty that it must have been within the contemplation of the parties had they contemplated a breach. With special damages pleaded and supported by the evidence and with requests to charge purporting to cover plaintiff's contentions in regard to the measure of damages, the court was justified in assuming that plaintiff adopted the theory that if the special damages were the proximate result of the breach of warranty they were recoverable. The implication from its requests is plain. It is not now in a position to contend that some other rule should have been given.

■ The jury had before it undisputed evidence showing cost of production of eggs, the average production from healthy pullets, the price of eggs during the season in question, and it could calculate the loss within a reasonable degree of certainty. There is no contention that its computation is not sustained by the evidence.

So far as the elimination of contamination as an element of damages is concerned, there was no definite evidence of damage from that source except the cost of vaccination. With that cost eliminated from the verdict, there was left only the loss of egg production as special damages.

■ Plaintiff assigns error on the failure of the court to instruct the jury as to minimization of damages. No request was made by plaintiff that the court charge the jury that it was the duty of defendant in this case to minimize his damages. While it is well established in Minnesota that in the case of a breach of contract the injured party must use reasonable diligence to minimize his damages, Wavra v. Karr, 142 Minn. 248, 172 N. W. 118; Barron G. Collier, Inc. v. Kindy, 146 Minn. 279, 178 N. W. 584; Barron G. Collier, Inc. v. Women's Garment Store, 152 Minn. 475, 189 N. W. 403, it is also well established that in the case of a breach of contract the burden of proof is upon the defendant to show that damages were or could have been mitigated by reasonable diligence.

Horn v. Western Land Assn. 22 Minn. 233; Beissel v. Vermillion Farmers Elev. Co. 102 Minn. 229, 113 N. W. 575, 12 L.R.A. (N.S.) 403; Bennett v. Morton, 46 Minn. 113, 48 N. W. 678. See, also, Rich v. Daily Creamery Co. 296 Mich. 270, 282, 296 N. W. 253, 258, 134 A. L. R. 232, 239, a recent case on this point, which also holds "that the burden is upon the defendant to show in mitigation of the damages claimed that the plaintiff has not used every reasonable effort within his power so to minimize his damages."

In the case at bar, plaintiff had the burden of showing that defendant, who counterclaimed for breach of warranty, did not exercise reasonable diligence in an effort to minimize his damages. It offered no evidence on this point; therefore it did not sustain the burden of proof, and there is no merit in its contention in regard to minimizing damages.

The further point is made that the terms of the note constituted a complete contract and that no warranty could be shown. On this point the case falls squarely within W. W. Kimball Co. v. Massey, 126 Minn. 461, 148 N. W. 307.

The order appealed from must be affirmed.