STATE, BY MILES LORD, ATTORNEY GENERAL, v.
CATHERINE PAHL AND OTHERS.
ERWIN HELLER AND OTHERS, RESPONDENTS.

95 N. W. (2d) 85.

February 20, 1959—No. 37,556.

350

*Miles Lord,* Attorney General, *Robert W. Mattson,* Deputy Attorney General, and *Richard J. Gunn,* Special Assistant Attorney General, for appellant.

*Maslon, Kaplan, Edelman, Joseph & Borman, Hyman Edelman,* and *Sidney J. Kaplan,* for respondents Heller.

*Dorsey, Owen, Scott, Barber & Marquart* and *Leavitt R. Barker,* for respondent Studebaker-Packard Corporation.

FRANK T. GALLAGHER, JUSTICE.

Appeal from an order of the district court denying motion for a new trial.

This condemnation proceeding was instituted in Hennepin County for the purpose of widening Highway No. 100 in the village of Bloomington. Respondents Erwin and Irene Heller own property and buildings fronting on the south side of the highway. The particular building pertinent to this appeal was constructed in 1948-1949. (All of the dimensions given hereafter are to the nearest whole foot.) It is rec-

tangular, being 133 feet wide and 200 feet deep, with the exception of an offset 45 feet by 33 feet in the southwest corner. It is set back 37 feet from the existing right-of-way line of Highway No. 100. The new right-of-way line is to be established 72 feet south of the existing line, which will take 35 feet off of the front of the building. This portion includes its more important components—the heating system, plumbing and water, lavatory, display room, offices, and lunchroom. The balance of the building is used as a warehouse.

On October 25, 1955, the village of Bloomington adopted Ordinance No. 72 regulating the village zoning and land uses. The property involved here is located in an area designated as Industrial Zone 1. The ordinance provides in part as follows:

"3. Industrial Zones I and III, shall conform to the following site restrictions:

\* \* \* \* \*

"(b) A minimum setback of 60' shall be observed from any street line, excepting industrial developments adjacent to a residential district or a non-conforming residential development shall be such as the Planning and Zoning Commission determines to be necessary to carry out the purposes of this ordinance."

Due to the adoption of this ordinance respondents' building became nonconforming with respect to the setback requirement of 60 feet but was conforming in that it was used for industrial purposes as required by another provision of the ordinance. With respect to nonconforming uses, the zoning ordinance contained a provision as follows (§ 2):

"The lawful use of any land or building existing at the time of the adoption of this ordinance may be continued although such use does not conform to the regulations hereinafter provided by this ordinance for the district in which such land is located, provided, however, that no such non-conforming use be altered, nor shall it be extended to occupy a greater area of land than that occupied by such use at the time of the adoption of this ordinance. If such non-conforming use ceases for a period of one year, any subsequent use shall be in conformity to the regulations specified by this ordinance. No such non-conforming use, if once changed to a use permitted in the District, shall be changed back to a non-conforming use. If, at any time, any structure

exclusive of foundation, in existence or maintained at the time of the adoption of this ordinance, which does not conform to the regulations in this ordinance provided, shall be *substantially destroyed,* then the land on which such structure was located or maintained shall from and after the date of such destruction be subject to all the regulations specified by this ordinance." (Italics supplied.)

The ordinance further provides for procedure by which application may be made for special-use permits and exceptions to the ordinance if they involve *minor* variations and in certain cases involving *unnecessary hardships.*

On March 29, 1956, the court appointed commissioners to appraise the property involved. Pursuant to that appointment, the commissioners awarded the sum of $115,000 to the Hellers, and $2,078 to the Studebaker-Packard Corporation, referred to herein as Studebaker, which occupied the premises under lease from the Hellers. The state appealed to the district court from this award.

At the trial in district court the state based its valuation on the theory that the Hellers would only be required to reestablish their building 37 feet back from the new right-of-way line, which would result in the destruction of the front 72 feet. The trial court, however, concluded, and Heller contends on appeal, that the taking resulted in a "substantial destruction" of the building and that, according to the terms of the ordinance, the building, if it were to remain, had to comply with the 60-foot setback provision. In other words, the taking under the trial court's view would ultimately result in the destruction of the front 95 feet of the building. The trial court refused to permit the state's experts to testify as to their opinion of the damages based on the state's contention that the owners would only lose the front 72 feet of their building. Instead, the court required the state's experts to base their valuation on the fact that the Hellers would actually lose the front 95 feet of the building. The trial court also refused to permit the state to introduce evidence of the provision in the ordinance which allows application for special-use permits and exceptions to the ordinance and evidence which would show that the Hellers had not made application for such a permit.

At the conclusion of the trial the court instructed the jury in part as follows:

"* * * as a proximate result of the taking there will be a substantial destruction of the building requiring alteration and therefore compliance with said ordinance which would not otherwise be required. You have the right to take this into consideration in determining the reasonable market value before and after the taking."

The jury awarded damages to respondents Heller in the amount of $111,940 ($58,410 for the value of the property actually taken and $53,530 for damages to the balance of their property involved) and $5,000 to respondent Studebaker.

The state assigns as error the refusal of the trial court to allow its witnesses to testify as to the value of the building if only the front 72 feet were destroyed; the refusal of the trial court to permit evidence of the procedure for procuring a variance permit; and also the instruction above quoted.

Four basic issues are raised by the assignments of error. They are as follows: (1) Was there, as a matter of law, a "substantial destruction" of the building within the meaning of the ordinance? (2) Must the owner of a building, which is situated 37 feet from the old highway right-of-way, comply with the new 60-foot setback provision of a municipal zoning ordinance where the building is substantially destroyed through condemnation by the state and the ordinance provides that a nonconforming building must comply if it is substantially destroyed? (3) If the owner is required to remove 60 feet of his building in addition to 35 feet which is actually acquired by the state in order that the front of the restored building will be set back in accordance with the requirements of the ordinance, are the damages occasioned by the removal of such portion of the building a compensable element of damages in the condemnation proceeding? (4) Did the Hellers have a duty to apply for a variance permit to allow them to maintain the remainder of their building less than 60 feet from the new right-of-way line?

■ As to whether as a matter of law the actual taking resulted in a "substantial destruction" of the building, the term "substantial" is

relative and its meaning is to be gauged by the circumstances. See, 40 Wd. & Phr. (Perm. ed.) p. 493, and cases cited thereunder. The state contends that there was not a substantial destruction of the building because only approximately 18½ percent of the total area of the building was actually taken. It further contends that after the taking, and without reference to the setback requirements, the building had a value of beween $65,000 and $70,000. Two of the state's expert witnesses testified that the cost of restoring the building, without reference to the setback provisions, would be $31,000. It would appear from those figures that the value of the remainder of the building was greater than the part that was actually taken. However, we are of the opinion that the issue of what constituted a substantial destruction is not necessarily controlled by the percentage of the area taken as compared with the area left, or the percentage of the value of the part taken as compared to the value of the remainder of the building. Rather, the nature and character of that part of the building which is actually taken must be considered. The front 35 feet of the building included a display room, office space, lunchroom, and the heating and plumbing components, or as stated by the trial judge, "all but bare warehousing, is located in that portion of the building being taken."

In view of the important nature and character of the part of the building taken as compared to the function of the entire building, we are of the opinion that as a matter of law there was a "substantial destruction" within the meaning of the ordinance.

■ In connection with the second issue, the state contends that Hellers would be entitled to build the same distance from the new right-of-way line as their building was from the old right-of-way line and that condemnation by the state, even though it caused a substantial destruction of the building, could not deprive Hellers of that right. The state cites Connor v. Township of Chanhassen, 249 Minn. 205, 81 N. W. (2d) 789, as controlling. In that proceeding the owner of a certain property, part of which had been condemned by the state to widen a highway, sought a declaratory judgment declaring a zoning ordinance for the township of Chanhassen unconstitutional. The owners of the property maintained a general repair shop on the premises. A zoning ordinance was passed in March 1952, and according to its terms the

owners' shop constituted a nonconforming use of the land. However, any lawful use of the land at the time the ordinance was adopted could be continued, even though it was a nonconforming use, as long as it was not extended to occupy a greater area of land, *was not moved to another part of the land,* or was not rebuilt after being 50 percent or more destroyed. The tract of land involved amounted to one acre. The condemnation proceeding covered the front one-fourth of the tract on which was situated the building where the owners operated their business. After the taking, the building in which the nonconforming use was conducted was rebuilt on a portion of the balance of the tract. This was contrary to the provisions of the ordinance which prohibited any nonconforming use to "be moved to any other part of the parcel of land upon which the same was conducted at the time of the adoption of this plan." Under the record in that proceeding there was nothing to warrant the assumption that the price paid for condemnation also included the compensation to the plaintiffs (owners) for the loss of the right to continue their business. In fact the state is not required to pay the owner for damages from interruption of business and good will. Connor v. Township of Chanhassen, *supra,* and cases cited therein.

We held, under those circumstances, where the owner could not be compensated for the loss of his business, that if the condemnation by the state gave effect to the prohibition of the ordinance so as to deprive the owners of the right to continue the operation of such business on the remaining portion of the tract, such an interpretation would constitute an unreasonable police regulation restricting the right of use of plaintiffs' property for business purposes contrary to the provisions of the constitution.

We do not consider that case controlling here because that case involved an element of damages in the loss of a right to continue a business for which the owner could not be compensated, whereas in the instant case compensation can be given under eminent domain. We accordingly hold that under the circumstances here a partial taking under condemnation by the state does give effect to the provisions of a zoning ordinance requiring compliance with the setback provisions when there is a "substantial destruction" of the building which is subject to the ordinance.

■  With reference to the third issue, where there is a partial taking under eminent domain the owner is entitled to the difference between the market value of the entire tract immediately before the taking and the market value of what is left after the taking. Minneapolis-St. Paul Sanitary Dist. v. Fitzpatrick, 201 Minn. 442, 277 N. W. 394, 124 A. L. R. 897; State, by Benson, v. Horman, 188 Minn. 252, 247 N. W. 4; see, 6 Dunnell, Dig. (3 ed.) § 3052; 1 Orgel, Valuation Under Eminent Domain (2 ed.) § 64. General market value before and after taking must be determined by a consideration of the uses for which the land is adapted and for which it is available. Minneapolis-St. Paul Sanitary Dist. v. Fitzpatrick, *supra;* State Roads Comm. v. Warriner, 211 Md. 480, 128 A. (2d) 248; Board of Education v. 13 Acres of Land (Del. Super.) 131 A. (2d) 180.

Existing valid zoning ordinances may prescribe or limit those uses which may be considered in proving market value. Evidence of value for uses prohibited by an ordinance may be introduced and considered only where there is evidence showing a reasonable probability that the ordinance will be changed in the near future. However, in the case at bar the record does not disclose any evidence which would indicate a reasonable probability that the 60-foot setback requirement will be changed. The general rule is stated in 4 Nichols, Eminent Domain (3 ed.) § 12.322, as follows:

"Insofar as existing zoning restrictions circumscribe the available uses to which land may be devoted they unquestionably affect the market value of property and no evidence in support of an enhanced value may be admitted where such enhanced value would be the result of a proscribed use."

See, also, Annotation, 173 A. L. R. 265, and City of Euclid v. Lakeshore Co. 102 Ohio App. 96, 133 N. E. (2d) 372.

In the instant case the uses of the property after the taking are restricted to structures which are set back 60 feet from the new right-of-way line; therefore the value of the property after the taking must be based on evidence which considers this restriction imposed by the ordinance.[1]

---

[1]In West Chicago Masonic Assn. v. City of Chicago, 215 Ill. 278, 74

■  Pertaining to the fourth issue, whether Hellers should have made application for a variance permit, the state cites United States v. First Nat. Bank (M. D. Ala.) 250 F. 299, and City of Lexington v. Chenault, 151 Ky. 774, 152 S. W. 939, 44 L.R.A. (N.S.) 301. These cases hold that a landowner in condemnation proceedings is subject to the rule of "avoidable consequences" and that accordingly he must exercise reasonable diligence to minimize his damages. Although there is some authority to the contrary,[2] we are of the opinion that the rule of avoidable consequences is applicable to the owner in a condemnation proceeding.[3] He must use "reasonable diligence to minimize his damages," Lanesboro Produce & Hatchery Co. v. Forthun, 218 Minn. 377, 381, 16 N. W. (2d) 326, 328, and the extent of the duty imposed by the rule depends on the facts of each case. Thoen v. First Nat. Bank, 199 Minn. 47, 271 N. W. 111.

Here the failure on the part of Hellers to make application for a variance permit as a matter of law does not constitute a breach of the duty to exercise reasonable diligence. Under the ordinance variance permits would be granted for minor variations or to prevent undue hardship. Thus, it was reasonable for the Hellers to conclude that a permit would not be granted because the variance of some 23 feet could not reasonably be considered minor; there was no undue hardship indicated because compliance with the setback provision only required the destruction of a portion of the building used for warehouse purposes which only involved bare walls and floor; and further the village council had indicated, by resolution, that the setback provision would be

---

N. E. 159, a part of a building was condemned. Ordinances prescribed the specifications for the construction of walls. In computing the value of the remaining structure and the cost of reconstruction it was held error not to instruct the jury that (215 Ill. 281, 74 N. E. 160) "if the remainder of the building was susceptible of re-construction it would have to be re-constructed subject to the ordinance of the city of Chicago regarding the erection of buildings."

[2]See, Wilson v. Fleming, 239 Iowa 718, 31 N. W. (2d) 393.

[3]See Kelly v. Chicago Park Dist. 409 Ill. 91, 98, 98 N. E. (2d) 738, 742, where the court stated that the principle of "avoidable consequences":

"* * * finds its application in virtually every type of case in which the recovery of a money judgment or award is authorized."

enforced. Thus we are of the opinion that the Hellers were not under a duty to make application for the variance permit.

We have considered the state's other assigned errors and find no basis for the claims that the court erred in those matters.

In view of the foregoing determination of the issues, it is unnecessary to consider the issues raised by respondent Studebaker.

Affirmed.