**R AND O ELEVATOR COMPANY, INC., Debtor/Appellant,**

v.

**Wayne HARMON, Appellee.**

**Bankruptcy No. 4–88–1341.**

**Civ. No. 4–88–810.**

United States District Court, D. Minnesota, Fourth Division.

Nov. 21, 1988.

---

Charles L. Nail, Jr., Julia A. Christians, Arnold & McDowell, Minneapolis, Minn., for debtor/appellant.

Larry B. Ricke, Wagner, Johnston & Falconer, Minneapolis, Minn., for appellee.

## MEMORANDUM AND ORDER

MacLAUGHLIN, District Judge.

This matter is before the Court on the appeal of debtor R & O Elevator Company, Inc. (R & O) from the June 29, 1988 order of the bankruptcy court. The bankruptcy court's order will be affirmed.

### FACTS

Debtor R & O is a company engaged in the construction and maintenance of elevators. Wayne Harmon, the claimant, had been president, chief executive officer and, along with his wife, a principal shareholder of R & O. On December 31, 1984, Harmon and R & O severed their relationship. R & O was originally owned by Mrs. Harmon's family and, apparently, a family dispute over the management of the company was resolved by having Harmon leave and allowing another relative to become president.

Harmon's exit was accomplished through two agreements, a stock repurchase agreement and a noncompetition agreement. Under the stock repurchase agreement, R & O repurchased all of the shares owned by Harmon and his wife through two separate promissory notes each paying twelve percent interest. Harmon's note called for

three installment payments of principal and interest on January 1st of 1985, 1986 and 1987. Under the noncompetition agreement, Harmon agreed not to compete with R & O in a six-state area for a period of three years. In return, R & O agreed to make quarterly payments to Harmon from January 1, 1985 through October 1, 1987.

R & O made all payments due under the note and the noncompetition agreement during 1985. Payments due on or after January 1, 1986 were not made, however, except for two partial payments of $15,000 each dated February 3, 1986 and April 11, 1986.

On May 2, 1986, R & O filed its voluntary petition for relief under chapter 11. A proposed plan of reorganization and a disclosure statement were filed on July 27, 1987. The proposed plan provided that all executory contracts would be rejected, except for a few specified contracts. The noncompetition agreement with Harmon was not specified, thus the proposed plan indicated an intent to reject the noncompetition agreement. The agreement was rejected when a plan of reorganization incorporating the relevant language from the proposed plan was confirmed on October 26, 1987—approximately three weeks after the final payment under the agreement was due.

Harmon filed claims for the amounts due on the promissory note and under the noncompetition agreement. The bankruptcy court applied the two partial prepetition payments made in 1986 against R & O's obligation on its note. The bankruptcy court allowed Harmon's claim in the amount of $64,404.30, the amount due under the note for 1986 and 1987 reduced by the two $15,000 partial payments. The bankruptcy court allowed Harmon's claim under the noncompetition agreement for the full amount outstanding, $147,950. This appeal concerns only the bankruptcy court's decision not to reduce Harmon's claim under the noncompetition agreement to reflect Harmon's alleged failure to mitigate his damages.

*The Bankruptcy Court's Decision*

The bankruptcy court began its analysis of the mitigation issue by noting that the noncompetition agreement was an executory contract. Memorandum Order re: Claims 69, 152 and 165, dated June 29, 1988 at 9. Rejection of an executory contract constitutes a breach by the debtor. *Id.*, *citing* 11 U.S.C. §§ 365(g)(1) and 502(g). By operation of law, that breach is deemed to have occurred immediately before the date debtor's petition was filed. *Id.* The damages for the breach are determined in accordance with the law which would govern the value of the claim outside the context of bankruptcy. *Id.*, *citing Bittner v. Borne Chemical Co.*, 691 F.2d 134, 135 (3d Cir.1982). The court therefore applied Minnesota law to determine damages. *Id.* The damages in this case were found to simply be the unpaid amount due under the agreement, subject to R & O's claim that Harmon should have mitigated his damages. *Id.* at 10. R & O was correctly held to bear the burden of proving that Harmon could have mitigated his damages through the exercise of reasonable diligence. *Id.* at 10–11, *citing Lanesboro Produce & Hatchery Co. v. Forthun*, 218 Minn. 377, 381, 16 N.W.2d 326, 328 (1944).

Before the bankruptcy court, R & O claimed that Harmon had an obligation to attempt to mitigate his damages as of May 2, 1986, because the agreement is deemed to be breached as of that date. *Id.* at 10. The bankruptcy court noted that, although the breach is deemed to have taken place immediately before the filing of the petition upon rejection, Harmon had remained obligated under the contract until the rejection was approved by the court. *Id.* at 11–12. The court also noted that R & O could have, but did not, move to reject the contract with Harmon at any time before confirmation. *Id.* at 12. R & O had accepted the benefits of the agreement but now sought, in effect, to escape its cost. *Id.*

On the other hand, the bankruptcy court noted that Harmon had been on notice that the R & O intended to reject the agreement as of July 27, 1987. *Id.* at 12 n. 3. The court, however, did not answer whether

Harmon ever had a duty to attempt to mitigate his damages. Rather, the court found that R & O had not carried its burden of proof in two respects. First, even assuming that at some point prior to the rejection of the agreement Harmon had a duty to seek to mitigate his damages, Harmon remained obligated under the agreement and could not mitigate without first moving the bankruptcy court to require R & O to decide whether to accept or reject the contract. The court found that R & O had failed to present evidence establishing when Harmon could have secured release from the agreement.[1] *Id.* at 12–13.

The court also found that R & O had failed to prove when Harmon could have secured comparable work. *Id.* at 14. R & O offered no evidence concerning the job market for applicants with Harmon's qualifications. *Id.* at 11 and 14. R & O attempted instead to rely on Harmon's own testimony that (1) he was "an employable, articulate and well-trained" corporate executive and that (2) two of R & O's competitors expressed interest in employing him within six months of his resignation. *Id.* at 11. The court took judicial notice of the fact that highly-paid executives of Harmon's age and stature will often experience a considerable delay before finding comparable employment[2] and held that the evidence offered by R & O did not satisfy its burden of proving that, with reasonable diligence, Harmon could have found a job between the time the petition for bankruptcy was filed and the time the plan was confirmed. *Id.* at 14.

DISCUSSION

This appeal presents three issues. The first issue involves determining when, during bankruptcy proceedings, a creditor whose claim is based on an executory contract with the debtor develops a legal duty to mitigate damages. This issue was not fully addressed by the bankruptcy court. It is an issue of law, and subject to de novo determination in this Court. *In re Briggs Transportation Co.*, 780 F.2d 1339, 1342 (8th Cir.1985). The second and third issues are whether Harmon had an obligation to mitigate under the particular circumstances of this case and whether R & O carried its burden of proving that Harmon had failed to mitigate. These two issues involve questions of fact and are reviewed only for clear error. Bankr. Rule 8013; 780 F.2d at 1342.

The focus of the present dispute is the language of sections 502(g) and 365(g)(1) of the Bankruptcy Code. Section 502(g) states:

> A claim arising from the rejection, under section 365 of this title or under a plan under chapter 9, 11, 12, or 13 of this title, *of an executory contract* or unexpired lease of the debtor that has not been assumed *shall be determined, and shall be allowed* under subsection (a), (b), or (c) of this section *or disallowed* under subsection (d) or (e) of this section, *the same as if such claim had arisen before the date of the filing of the petition.*

(Emphasis added.) The purpose of section 502(g) is to treat a party "injured by the rejection of an executory contract or unexpired lease … as a prepetition creditor with respect to that claim." H.Rep. No. 95–595, 95th Cong., 2d Sess. 354, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5963, 6310. Section 365(g)(1) is consistent with section 502(g), providing that a

---

**1.** If a debtor does not assume or reject a contract, a debtor may, after a reasonable time, apply to the court for an order affirmatively fixing a time within which the trustee must reject or assume the contract. *Id.* at 13, *citing Theatre Holding Corp. v. Mauro*, 681 F.2d 102, 104–05 (2d Cir.1982). The bankruptcy court noted that, with executory contracts, "a reasonable time" is generally held to be at least 120 days after the bankruptcy filing and had been found to be as late as one year after the petition was filed. *Id.* at 13 n. 5, *citing In re Wedtech*, 72 B.R. 464, 471 (Bankr.S.D.N.Y.1987) and other cases.

**2.** The court noted that a standard rule of thumb in job placement circles was that a job hunt will take one month for each $10,000 in the job hunter's salary scale. Harmon's pay was averaging $100,000 per year at the time of his resignation; therefore under this rule Harmon's job search would be estimated to take ten months. *Id.* at 14 n. 6, *citing* Bolles, *The 1987 What Color Is Your Parachute: A Practical Manual for Job Hunters and Career Changers* (1987) at 46.

rejection of an executory contract or unexpired lease will constitute "a breach" of the contract "immediately before the date of the filing of the petition." 11 U.S.C. § 365(g)(1).

To the extent that the claim is allowed by the bankruptcy court, a party to an executory contract rejected by the debtor will share in the distribution of the debtor's assets with the debtor's other unsecured creditors. Section 502(b)(1) permits the bankruptcy court to disallow a claim to the extent that "such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than that because such claim is contingent or unmatured." Taken together, these provisions create a statutory scheme that attempts to promote both " 'the bankrupt's ability to restructure its business operations into an economically viable format' " and the principles of contract law which " 'ensure that the injured party receives the benefit of its bargain according to the contract's own terms.' " *Mazirow v. Grigsby (In re White Motor Corp.)*, 44 B.R. 563, 568 (N.D.Ohio 1984), *quoting* Nimmer, *Executory Contracts in Bankruptcy: Protecting the Fundamental Terms of the Bargain*, 54 U.Colo.L. Rev. 507, 513–15 (1983). The statute protects the bankrupt estate's ability to restructure by denying the nonbankrupt party to an executory agreement the ability to assert any protectible interest which might offset the bankrupt estate's interest in divesting itself of burdensome property. 44 B.R. at 569. The nonbankrupt party must rely on the basic contract law right to recover damages. 44 B.R. at 569. Rejection of an executory contract terminates the obligation of the parties under the contract and provides the nonbankrupt party with a prepetition claim for damages. The debtor may challenge the claim through any defense "not foreclosed by the judicial finding that the debtor failed to perform its obligations under the contract." 44 B.R. at 570. The statute thus achieves a balance between the bankruptcy goals of, on the

one hand, promoting rehabilitation and providing creditors with an optimal distribution and, on the other, encouraging contractual activity by allowing each party to a contract the benefit of their bargain. 44 B.R. at 569.

■ The defense that the nonbankrupt party failed to mitigate damages may be raised by the debtor. *See, e.g., In re U.S. Truck*, 89 B.R. 618, 628 (E.D.Mich.1988) (where debtor had failed to deduct union dues from paychecks union found to have no duty to mitigate damages by collecting dues directly from employees). However, only one reported decision can be found which reduces a claim under an executory contract for the party's failure to mitigate damages prior to the bankrupt party formally securing a court order rejecting the contract. *In re Steiner*, 50 B.R. 181 (Bankr.N.D.Ohio 1985). In that case, which involved a lease of farm equipment, the debtors returned the leased equipment at the end of the first harvest following their filing of bankruptcy. 50 B.R. at 183. The court found the return of the equipment was "as a practical matter" a rejection of the lease. 50 B.R. at 184. As a result, although the lease had not yet been formally rejected (50 B.R. at 184), the court held that the lessor's claim against the estate should be reduced to reflect the lessor's opportunity to mitigate.[3] 50 B.R. at 186.

■ There is no single meaning for the phrase "mitigation of damages." 22 Am. Jur.2d, *Damages* § 492. It generally refers to three types of claims:

(1) that the plaintiff reasonably could have avoided a part or all of the consequences of the defendant's wrongful act;
(2) that the plaintiff received a benefit as a result of the defendant's wrongful act; and (3) that in cases where the nature of the defendant's conduct is material to the damages recoverable, his conduct was not as wrongful as plaintiff claims.

---

**3.** The court continued the hearing for the purpose of taking evidence on the appropriate measure of mitigation. 50 B.R. at 186.

22 Am.Jur.2d, *Damages* § 492. In this case, the debtor claims that the claimant could have avoided the consequences of debtor's breach. Minnesota law limits the amount of damages recoverable in a breach of contract action to the extent that the injured party acted reasonably to prevent his own loss. *Bemidji Sales Barn, Inc. v. Chatfield*, 312 Minn. 11, 250 N.W.2d 185, 189 (1977). While the question of what is reasonable will always depend on the particular facts of each case, *In re Steiner* suggests that a party to an executory contract with a petitioner in bankruptcy will not be responsible for mitigating damages until either a court approves the rejection of the contract or the debtor acts in a way which effectively constitutes a rejection of the contract.

R & O argues that the nonbankrupt party to an executory contract ought to bear greater responsibility for mitigating damages than is suggested by *In re Steiner*. Arguing from the fact that, upon rejection, the contract is deemed breached as of the date the petition was filed, R & O argues that the duty to mitigate should also be deemed to arise as of the filing date. To the counter-argument that by so doing the law would be requiring a party to do the impossible, R & O responds that the creditor may be found to have failed to mitigate for failing to exercise reasonable diligence in moving the bankruptcy court to order the debtor to determine whether to accept or reject the contract. Appellant's Brief at 10.

R & O's argument is neither persuasive nor good policy. First, the statute[4] and the legislative history specifically state that the reason section 365(g)(1) provides that the rejection of an executory contract will constitute a breach immediately before the date of the filing of the petition is to establish that the nondebtor party to an executory contract is entitled to be treated the same as an unsecured creditor holding a prepetition claim. As discussed above, this achieves a balance between the goals of, on the one hand, protecting the creditor's interest by providing a remedy in damages for the unexecuted part of the contract, and, on the other, of protecting the bankrupt party's ability to restructure its operations by ensuring that the contract remains enforceable until the debtor can arrive at a considered decision to reject or assume the contract. Nothing in the legislative history or the language of the statute suggests that these sections were intended to impose a duty on the creditor to anticipate rejection and begin efforts to mitigate.

Second, imposing on the nonbankrupt party to an executory contract the risk of having the claim diminished for failure to mitigate runs contrary to the scheme of protections established by the Code. It is the duty of the bankruptcy trustee or the debtor-in-possession to decide, subject to court approval, whether executory contracts should be rejected or assumed. 11 U.S.C. § 365(a). An executory contract may be assumed or rejected at any time before confirmation of the plan of reorganization. 11 U.S.C. § 365(d)(2). A decision to assume the contract has the effect of giving the expenses and liabilities incurred under the contract administrative priority. *In re Coast Trading Co.*, 744 F.2d 686, 692–93 (9th Cir.1984). A claimant is permitted to protect its interest under an executory contract by moving for an order requiring the bankrupt party to recommend assumption or rejection of the contract within a specified time. 11 U.S.C. § 365(d)(2). The law, however, requires that the bankrupt party have a reasonable time within which to decide whether assumption or rejection of the contract is the better course to recommend to the court. *Philadelphia Co. v. Dipple*, 312 U.S. 168, 174, 61 S.Ct. 538, 541, 85 L.Ed. 651 (1941). The right to a reasonable time for decision "is paramount to the other party's right to assert an anticipatory breach because of bankruptcy or the right to claim a forfeiture, as in a lease, because of non-performance by the trustee or debtor in possession." 2 *Collier on Bankruptcy* par. 365.-

---

**4.** The language of section 502(g) states that "[a] claim arising from the rejection ... of an executory contract ... shall be allowed ... or disallowed ... the same as if such claim had arisen before the date of the filing of the petition."

03 at 365–26 thru 365–27 (15th ed. 1988). Were the statute interpreted as R & O suggests, creditors could protect the value of their claims only by demanding hasty decisions on assumption or rejection of the contract. This would disrupt the balance struck by the Code which protects the creditor's claim by preserving its right to damages under the contract while allowing the debtor to keep the contract in effect while a plan of reorganization is developed.

Moreover, if R & O's argument is adopted, every creditor with a claim under an executory contract will be at risk of having its claim diminished for failure to mitigate unless the creditor is diligent about moving for prompt decision by the trustee or debtor-in-possession on whether to recommend assumption or rejection of the contract. The result would be to clutter the bankruptcy courts with formalistic motions hindering, rather than promoting, the fair and expeditious resolution of bankruptcy cases.

Ultimately, this case does not require the Court to resolve the merits of R & O's argument, however. A creditor will not incur a responsibility to mitigate while the debtor is accepting the benefit of the contract. As the Supreme Court has stated, "[i]f the debtor-in-possession elects to continue to receive benefits from the other party to an executory contract pending a decision to reject or assume the contract, the debtor-in-possession is obligated to pay for the reasonable value of those services, which, depending on the circumstances of a particular contract may be what is specified in the contract." *N.L.R.B. v. Bildisco and Bildisco*, 465 U.S. 513, 531, 104 S.Ct. 1188, 1199, 79 L.Ed.2d 482 (1984) (citations omitted).

R & O did not move the bankruptcy court to either assume or reject its contract with Harmon until it submitted a proposed plan of reorganization on July 27, 1987. By not seeking rejection R & O preserved its ability to enforce the contract against Harmon.

On the other hand, by not assuming the contract, R & O avoided giving the payments due Harmon administrative priority. Thus, Harmon's recovery under the contract remained limited to the fractional share of his claim that will ultimately be provided through distribution. R & O benefited from Harmon's agreement not to compete and should not escape its corresponding obligation. The Court concludes that no duty to mitigate damages arose on Harmon's part because R & O continued to accept the benefit of the contract, at least until July 27, 1987.[5] Although the bankruptcy court does not specifically reach this conclusion, its opinion clearly supports this reasoning and result.

An alternative basis for deciding this appeal is the Court's determination that the bankruptcy court correctly found that R & O had not established either when Harmon could have secured release from the contract or when Harmon could have secured comparable work. R & O does not contest the first finding, but it does dispute the latter. R & O contends that the fact that two competitors of R & O expressed interest in employing Harmon during the first six months after he resigned demonstrates that the bankruptcy court's finding "that Harmon, on the average, would only be able to obtain comparable employment after a job search lasting ten months is without firm basis in logic." Appellant's Brief at 12.

R & O misreads the bankruptcy court's decision. The bankruptcy court did not hold that it would take Harmon ten months to find comparable work. It found only that R & O did not carry its burden of proving when Harmon could have secured comparable work. The bankruptcy court took judicial notice of the fact that highly paid executives often incur considerable delay in finding comparably high-paying positions, but its conclusion was dictated by R & O's failure to present any evidence con-

---

5. Arguably, the proposed plan of reorganization, which indicated that R & O would seek to reject the contract with Harmon, gave rise to a duty on Harmon's part to mitigate damages. At that date, however, only approximately five months remained on the contract. However, as the bankruptcy court found, R & O failed to establish that Harmon could have, in the exercise of reasonable diligence, found comparable work during that time.

cerning the job market for applicants with Harmon's qualifications. The bankruptcy court's conclusion is sound. The interest expressed in employing Harmon right after he left R & O does not establish what Harmon's job prospects were one and one-half years later when the petition was filed or three and one-half years later when the proposed plan was submitted. Essentially R & O asked that the bankruptcy court assume both that the job market remained the same and that Harmon, although he was no longer intimately familiar with the customers and operations of the regional elevator industry, remained equally marketable. The bankruptcy court correctly decided that R & O did not establish when Harmon could have secured comparable work.

Therefore, based upon the foregoing and upon review of all the files, records and proceedings herein,

IT IS ORDERED that the June 29, 1988 order of the United States Bankruptcy Court is affirmed.

LET JUDGMENT BE ENTERED ACCORDINGLY.